# TEAL *v.* WALKER.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

Argued March 25th, 26th, 1884.—Decided April 7th, 1884.

*Mortgage—Pleading.*

When a demurrer to a complaint for failure to state a cause of action is overruled, the defendant, by answering, does not lose his right to have the judgment on the verdict reviewed for error in overruling the demurrer.

A conveyance to a trustee, absolute on its face, but with an instrument of defeasance showing that it is to secure payment of a debt due to a third party, is a mortgage, and is subject to the rule that a mortgagee is not entitled to the rents and profits until he acquires actual possession.

The rule that the mortgagee is not entitled to the rents and profits before actual possession, applies even when the mortgagor covenants in the mortgage to surrender the mortgaged property on default in payment of the debt, and nevertheless refuses to deliver it after default, and drives the trustee to his action to enforce the trust.

The statute of Oregon which provides that "a mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law," establishes absolutely the rule that a mortgagee is not entitled to the rents and profits before foreclosure.

This was an action at law brought by Walker, the defendant in error, against Teal, the plaintiff in error. The record disclosed the following facts: On August 19th, 1874, Bernard Goldsmith borrowed of James D. Walker the sum of $100,000, and gave to the latter his note, dated Portland, Oregon,

August 19th, 1874, for the payment to Walker or his order, two years after date, of the sum borrowed, with interest payable monthly at the rate of one per cent. per month from date until paid. Goldsmith, at the time the note was executed, was the owner in fee of certain lands in the State of Oregon and in the Territory of Washington, and he and Joseph Teal were the joint owners and tenants in common of certain other lands in Oregon. On August 19th, 1874, Goldsmith conveyed to one Henry Hewett, by four several deeds, absolute on their face, the lands in Oregon and in Washington Territory of which he was the sole owner, and on the same day he and Teal executed and delivered, to the same grantee, three several deeds, absolute on their face, for the lands which they jointly owned as tenants in common, one being for lands in Linn County, another for contiguous lands in Polk and Benton Counties, and the third for lands in Clackamas County, all in the State of Oregon. These deeds were intended as a security for the above-mentioned note, as appeared by a defeasance in writing, executed on the same day as the note by Goldsmith, Teal, Hewett and Walker. This instrument, after reciting the execution of the note above mentioned, declared that Hewett held the legal title to the lands conveyed to him as aforesaid, in trust and for the uses therein described. It then declared as follows: " Subject to the legal title of Hewett, Teal, and Goldsmith, or Goldsmith alone shall (1) retain possession of the lands, and take and have, without account, the issues and profits thereof—they paying all taxes and public charges imposed thereon—until said note should become due and remain unpaid thirty days; (2) that if such default is made in the payment of said note, Goldsmith and Teal ' will and shall, on demand, peacefully surrender to Hewett' the possession of said property, who 'may and shall proceed and take possession' of the same, ' and on thirty days' notice in writing to Teal and Goldsmith . . . requiring them to pay said debt, . . . and on their failure so to pay, shall sell the same at public auction on not more than thirty days' notice,' or sufficient thereof to pay the debt and charges."

The instrument further declared " that if the above recited

promissory note, and the interest thereon, and all the taxes, charges, and assessments on said land be duly paid by said Goldsmith, or for him, then the deeds aforesaid shall be void, and said Hewett, or his representatives or successors in trust, shall reconvey all said lands and every part thereof to said Teal and Goldsmith, or said Goldsmith, or their representatives entitled thereto."

On October 18th, 1876, there was due and unpaid upon the note made by and delivered by Goldsmith to Walker the sum of $96,750. To secure an extension of time of one year from that date for the payment of the note, Goldsmith and Teal agreed to give further security for its payment.

Thereupon Goldsmith conveyed by a deed, absolute on its face, to Hewett certain lots in the city of Portland, of which he was the owner, and Goldsmith and Teal by a like deed conveyed to Hewett certain other lots in Portland and certain lands in Linn County, Oregon, of which they were joint owners and tenants in common. On the same day, October 18th, 1876, Walker, Hewett, Goldsmith, and Teal executed another defeasance, in which, after reciting the conveyances by Goldsmith, and Goldsmith and Teal, above mentioned, declared that Hewett held the legal title to lands so conveyed in trust, and to the same uses and purposes for which he held the lands mentioned in the defeasance of August 19th, 1874. By this instrument Goldsmith and Teal undertook and agreed that Goldsmith should pay promptly one-twelfth of ten per cent. per annum of the interest of the note every month, and should pay the principal and the residue of the interest at the end of the year. It was further stipulated between the parties that if default was made in the payment of the monthly instalments of interest, the principal should immediately become due, and all the property, both that conveyed August 19th, 1874, and that conveyed October 18th, 1876, should be sold for the payment thereof, as by law and the agreement of August 19th, 1874, was provided. The instrument of October 18th, 1876, further provided as follows: " The agreement of August 19th, 1874, is not annulled, vacated, or set aside by the execution of this agreement, excepting in so far as the same may conflict

with this agreement; in all other respects the two instruments are to be taken and construed together."

Interest was paid on the note made by Goldsmith to the plaintiff up to January 21st, 1877, but none after that date. In April, 1877, Goldsmith conveyed to Teal all his estate in the lands which he had conveyed in trust to Hewett by the deeds of August 19th, 1874, and October 18th, 1878, and put Teal in possession thereof.

On July 6th, 1877, the interest on the note being in arrear since January 21st preceding, Hewett demanded of Teal the possession of all the property conveyed by said deeds. He refused to yield possession, and held the lots in the city of Portland until November 30th, 1878, and the farm lands until some time in the same month and year.

Walker, by reason of Hewett's refusal to surrender possession of the property conveyed in trust to Hewett, was compelled to and did bring suit to enforce the sale of the property. All the property was sold, either in accordance with the terms of the defeasances above mentioned or by order of court, and the proceeds of the sale fell far short of paying the note, leaving a balance due thereon of more than $50,000, which Goldsmith had no means to pay.

This action was brought by Walker, the payee of the note, against Teal, to recover the damages which he claimed he had sustained by the refusal of Teal to surrender possession of the property of which Goldsmith had been the owner, or which he had owned jointly with Teal, and which had been conveyed to Hewett in trust as aforesaid. The complaint recited the facts above stated, and averred that by reason of the refusal of Teal to surrender possession of the property to Hewett, Walker had been damaged in the sum of $16,000, for which sum the complainants demanded judgment.

Teal filed a demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, with leave to Teal to answer. He answered, and among other things, denied that Walker had been damaged, by the refusal of Teal to deliver possession of the property, in the sum of $16,000 or any other sum.

The case, having been put at issue by the filing of a replication, was tried by a jury, which returned a verdict for the plaintiff for $5,345.88, on which the court rendered judgment. To reverse that judgment Teal prosecuted this writ of error.

*Mr. John H. Mitchell* for plaintiff in error.

*Mr. A. H. Garland* for defendant in error.

Mr. JUSTICE WOODS delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

The writ of error is not taken to reverse the judgment of the court upon the demurrer to the complaint, for that was not a final judgment, but to reverse the judgment rendered upon the verdict of the jury. The error, if it be an error, of overruling the demurrer could have been reviewed on motion in arrest of judgment, and is open to review upon this writ of error. When the declaration fails to state a cause of action, and clearly shows that upon the case as stated the plaintiff cannot recover, and the demurrer of the defendant thereto is overruled, he may answer upon leave and go to trial, without losing the right to have the judgment upon the verdict reviewed for the error in overruling the demurrer. The error is not waived by answer, nor is it cured by verdict. The question, therefore, whether the complaint in this case states facts sufficient to constitute a case of action, is open for consideration.

The plaintiff in error insists that Goldsmith, having conveyed to him all his estate in the lands described in the deed to Hewett, the latter cannot recover of him damages, that is to say, the rents and profits, because he refused to deliver to him the premises. We are of opinion that this contention is well founded, and that neither Goldsmith nor the plaintiff in error was liable to account to Hewett or Walker for the rents and profits of the premises.

A deed absolute upon its face, but intended as a security for the payment of money, is a mortgage, even at law, if accompanied by a separate contemporaneous agreement in writing to reconvey upon the payment of the debt. *Nugent* v. *Riley*, 1 Met. 117; *Wilson* v. *Shoenberger*, 31 Penn. St. 295; *Dow* v.

*Chamberlain,* 5 McLean, 281; *Bayley* v. *Bailey,* 5 Gray, 505; *Lane* v. *Shears,* 1 Wend. 433; *Friedley* v. *Hamilton,* 17 S. & R. 70; *Shaw* v. *Erskine,* 43 Me. 371.

It is clear, upon these authorities, that the three deeds executed by Goldsmith and Teal jointly, and the several deeds executed by Goldsmith alone, to Hewett on August 19th, 1874, and the defeasance executed on that day by Hewett and Walker, are to be construed together, and so construed they constitute a mortgage given to secure a debt. The lands owned by Goldsmith were conveyed by several deeds, evidently for convenience in registration, as the lands lay in several counties of Oregon and some of them in the Territory of Washington. The lands owned by Goldsmith and Teal jointly, also lay in several counties, and were conveyed by separate deeds for the same reason. The execution of all the deeds, and the execution of the defeasance which applied to all the deeds, occurred on the same day, and was clearly one transaction, the object of which was to secure the note for $100,000 made and delivered by Goldsmith to Walker. The same remarks apply to the second set of deeds executed by Goldsmith, and Goldsmith and Teal, on October 18th, 1876, and the defeasance executed by Hewett and Walker on the same day. In fact, all the deeds and the two defeasances might, without violence, be regarded in equity as two mortgages executed at different times with one and the same defeasance; for the defeasance last executed provides that it shall not have the effect to annul, vacate, or set aside the first except in so far as the two conflict; in all other respects the two were to be taken and construed together. We are, therefore, to apply the same rules to the questions arising in this case as if we had to deal with mortgages executed in the ordinary form.

The decision of the question raised by the demurrer to the complaint is not affected by the stipulation contained in the defeasance of August 19th, 1874, that Goldsmith and Teal should, on default made in the payment of the principal of Goldsmith's note, and on the demand of Hewett, surrender the mortgaged premises to him. If this was a valid and binding undertaking, it did not change the rights of the parties. Without any

such stipulation, Hewett, unless it was otherwise provided by statute, was entitled, at least on default in the payment of the note of Goldsmith, to the possession of the mortgaged premises. *Keech* v. *Hall*, 1 Doug. 21; *Rockwell* v. *Bradley*, 2 Conn. 1; *Smith* v. *Johns*, 3 Gray, 517; *Jackson* v. *Dubois*, 4 Johns. 216; *Furbush* v. *Goodwin*, 29 N. H. 321; *Howard* v. *Houghton*, 64 Me. 445; *Den ex dem. Hart* v. *Stockton*, 7 Halst. 322; *Ely* v. *M'Guire*, 2 Ohio, 223. Vol. 1 and 2, 2d Ed. 372. The rights of the parties are, therefore, the same as if the defeasance contained no contract for the delivery of the possession.

We believe that the rule is without exception that the mortgagee is not entitled to demand of the owner of the equity of redemption the rents and profits of the mortgaged premises until he takes actual possession. In the case of *Moss* v. *Gallimore*, 1 Doug. 279, Lord Mansfield held that a mortgagee, after giving notice of his mortgage to a tenant in possession holding under a lease older than the mortgage, is entitled to the rent in arrear at the time of the notice, as well as to that which accrues afterwards. This ruling has been justified on the ground that the mortgagor, having conveyed his estate to the mortgagee, the tenants of the former became the tenants of the latter, which enabled him, by giving notice to them of his mortgage, to place himself to every intent in the same situation towards them as the mortgagor previously occupied. *Rawson* v. *Eicke*, 7 Ad. & El. 451; *Burrowes* v. *Gradin*, 1 Dowl. & Lowndes, 213.

Where, however, the lease is subsequent to the mortgage, the rule is well settled in this country, that, as no reversion vests in the mortgagee, and no privity of estate or contract is created between him and the lessee, he cannot proceed, either by distress or action, for the recovery of the rent. *Mayo* v. *Shattuck*, 14 Pick. 533; *Watts* v. *Coffin*, 11 Johns. 495; *McKircher* v. *Hawley*, 16 Id. 289; *Sanderson* v. *Price*, 1 Zabr. 637; *Price* v. *Smith*, 1 Green's Ch. (N. J.) 516.

The case of *Moss* v. *Gallimore* has never been held to apply to a mortgagor or the vendee of his equity of redemption. Lord Mansfield himself, in the case of *Chinnery* v. *Blackman*,

3 Doug. 391, held that until the mortgagee takes possession the mortgagor is owner to all the world, and is entitled to all the profits made.

The rule on this subject is thus stated in Bacon's Abridgement, Title Mortgage C: "Although the mortgagee may assume possession by ejectment at his pleasure, and, according to the case of *Moss* v. *Gallimore*, Doug. 279, may give notice to the tenants to pay him the rent due at the time of the notice, yet, if he suffers the mortgagor to remain in possession or in receipt of the rents, it is a privilege belonging to his estate that he cannot be called upon to account for the rents and profits to the mortgagee, even although the security be insufficient."

So, in *Higgins* v. *York Buildings Company*, 2 Atk. 107, it was said by Lord Hardwicke: "In case of a mortgagee, where a mortgagor is left in possession, upon a bill brought by the mortgagee for an account in this court, he never can have a decree for an account of rents and profits from the mortgagor for any of the years back during the possession of the mortgagor," and the same judge said in the case of *Mead* v. *Lord Orrery*, 3 Atk. 244: "As to the mortgagor, I do not know of any instance where he keeps in possession that he is liable to account for the rents and profits to the mortgagee, for the mortgagee ought to take the legal remedies to get into possession."

In *Wilson, ex parte*, 2 Ves. & B. 252, Lord Eldon said: "Admitting the decision in *Moss* v. *Gallimore* to be sound law, I have been often surprised by the statement that a mortgagor was receiving the rents for the mortgagee. . . In the instance of a bill filed to put a term out of the way, which may be represented as in the nature of an equitable ejectment, the court will, in some cases, give an account of the past rents. There is not an instance that a mortgagee has *per directum* called upon the mortgagor to account for the rents. The consequence is, that the mortgagor does not receive the rents for the mortgagee." See, also, *Coleman* v. *Duke of St. Albans*, 3 Ves. Jr. 25; *Gresley* v. *Adderly*, 1 Swanst. 573.

The American cases sustain the rule that so long as the

mortgagor is allowed to remain in possession, he is entitled to receive and apply to his own use the income and profits of the mortgaged estate ; and, although the mortgagee may have the right to take possession upon condition broken, if he does not exercise the right, he cannot claim the rents; if he wishes to receive the rents, he must take means to obtain the possession. *Wilder* v. *Houghton*, 1 Pick. 87 ; *Boston Bank* v. *Reed*, 8 Pick. 459 ; *Noyes* v. *Rich*, 52 Me. 115.

In *Hughes* v. *Edwards*, 9 Wheat. 500, it was held that a mortgagor was not accountable to the mortgagee for the rents and profits received by him during his possession, even after default, and even though the land, when sold, should be insufficient to pay the debt, and that the purchaser of the equity redemption was not accountable for any part of the debt beyond the amount for which the land was sold.

In the case of *Gilman* v. *Illinois & Mississippi Telegraph Company*, 91 U. S. 603, it was declared by this court that where a railroad company executed a mortgage to trustees on its property and franchises, "together with the tolls, rents, and profits to be had, gained, or levied thereupon," to secure the payment of bonds issued by it, the trustees, in behalf of the creditors, were not entitled to the tolls and profits of the road, even after condition broken, and the filing of a bill to foreclose the mortgage, they not having taken possession or had a receiver appointed. The court said, in delivering judgment in this case: "A mortgagor of real estate is not liable for rent while in possession. He contracts to pay interest not rent." So in *Kountze* v. *Omaha Hotel Company*, 107 U. S. 378, it was said by the court, speaking of the rights of a mortgagee: "But in the case of a mortgage, the land is in the nature of a pledge : it is only the land itself, the specific thing, which is pledged. The rents and profits are not pledged ; they belong to the tenant in possession, whether the mortgagor or third person claims under him. . . The plaintiff in this case was not entitled to the possession, nor the rents and profits." See also *Hutchins* v. *King*, 1 Wall. 53, 57–58.

Chancellor Kent states the modern doctrine in the following language : "The mortgagor has a right to lease, sell and in

every respect to deal with the mortgaged premises as owner so long as he is permitted to remain in possession, and so long as it is understood and held that every person taking under him, takes subject to all the rights of the mortgagee, unimpaired and unaffected. Nor is he liable for rents, and the mortgagee must recover the possession by regular entry by suit before he can treat the mortgagor, or the person holding under him, as a trespasser." 4 Kent Com. 157. See also *American Bridge Company* v. *Heidelbach,* 94 U. S. 798; *Clarke* v. *Curtis,* 1 Grattan, 289; *Bank of Ogdensburg* v. *Arnold,* 5 Paige Ch. 38; *Hunter* v. *Hays,* 7 Biss. 362; *Souter* v. *La Crosse Railway,* Woolworth C. C. 80, 85; *Foster* v. *Rhodes,* 10 Bank. Reg. 523. The authorities cited show that, as the defendant in error took no effectual steps to gain possession of the mortgaged premises, he is not entitled to the rents and profits while they were occupied by the owner of the equity of redemption.

The case against the right of the defendant in error to recover in this case the rents and profits received by the owner of the equity of redemption is strengthened by section 323, chapter 4, title 1, General Laws of Oregon, 1843–1872, which declares that " a mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law."

This provision of the statute cuts up by the roots the doctrine of *Moss* v. *Gallimore, ubi supra,* and gives effect to the view of the American courts of equity that a mortgage is a mere security for a debt, and establishes absolutely the rule that the mortgagee is not entitled to the rents and profits until he gets possession under a decree of foreclosure. For if a mortgage is not a conveyance, and the mortgagee is not entitled to possession, his claim to the rents is without support. This is recognized by the Supreme Court of Oregon as the effect of a mortgage in that State. In *Besser* v. *Hawthorn,* 3 Oregon, 129 at 133, it was declared : " Our system has so changed this class of contracts that the mortgagor retains the right of possession and the legal title." See, also, *Anderson* v. *Baxter,* 4 Oregon, 105; *Roberts* v. *Sutherlin,* Id. 219.

The case of the defendant in error cannot be aided by the stipulation in the defeasance of August 19th, 1874, exacted by the mortgagee, that Goldsmith and Teal would, upon default in the payment of the note secured by the mortgage, deliver to Hewett, the trustee, the possession of the mortgaged premises. That contract was contrary to the public policy of the State of Oregon, as expressed in the statute just cited, and was not binding on the mortgagor or his vendee, and, although not expressly prohibited by law, yet, like all contracts opposed to the public policy of the State, it cannot be enforced. *Railroad Company* v. *Lockwood*, 17 Wall. 357; *Bank of Kentucky* v. *Adams Express Company*, 93 U. S. 174; *Marshall* v. *Baltimore & Ohio Railroad Company*, 16 How. 314; *Meguire* v. *Corwine*, 101 U. S. 108.

In any view of the case, we are of opinion that the defendant in error was not entitled to receive the rents sued for in this action. As this conclusion takes away the foundation of the suit, it is unnecessary to notice other assignments of error.

*The judgment of the Circuit Court is reversed, and the cause remanded to that court for further proceedings in conformity with this opinion.*