## NORTHWESTERN MUT. LIFE INS. CO. v. SECURITY SAVINGS & TRUST CO.

### (Circuit Court of Appeals, Ninth Circuit. December 1, 1919.)

### No. 3329.

1. LANDLORD AND TENANT ⬩80½—PRESUMPTION OF ASSIGNMENT BY LESSEE.
    If one other than the lessee is in possession of leased premises, the law will presume that he is an assignee of the lease; but such presumption is not irrefutable.

2. LANDLORD AND TENANT ⬩79(2)—PERSON LIABLE FOR RENT ON ASSIGNMENT BY LESSEE.
    Privity of estate, by which one is made liable to perform covenants of a lease that run with the land, requires a transfer of the legal title by the lessee and its acceptance by the assignee.

3. LANDLORD AND TENANT ⬩208(6)—MORTGAGEE IN POSSESSION NOT LIABLE FOR GROUND RENT.
    The trustee in a mortgage of leasehold property on which the mortgagor had erected a building, which under the terms of the mortgage and at the mortgagor's request took possession of the building, and paid the running expenses, and collected the rents for the benefit of the bondholders, *held* not liable on the covenants of the lease for ground rent.

In Error to the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by the Northwestern Mutual Life Insurance Company against the Security Savings & Trust Company. Judgment for defendant, and plaintiff brings error. Affirmed.

The insurance company brought this action against the Security Savings & Trust Company to recover rent from the trust company. In 1910 one Peterson owned lot 2 in block 7 in the city of Portland, and one Mallory owned two lots adjoining in the same block. On February 12, 1910, Peterson leased his ground for 23 years to a corporation which may be called the building company. Thereafter, in August, 1910, the building company, to secure an issue of bonds, made a mortgage to the trust company, conveying, assigning, transferring, and setting over to the trust company, as trustee, all and singular the "leasehold property lease and premises" described in and leased by the Peterson and Mallory leases. The mortgage also included a fire-proof concrete building being erected upon all the lots hereinbefore described. Thereafter, on February 15, 1911, Peterson and his wife, to secure a loan made to Peterson by the insurance company, executed and delivered to it a mortgage on lot 2, which had been theretofore leased, and at the same time and as part of the same transaction, as additional security, executed an instrument wherein it was recited that Peterson and wife "do hereby sell, assign, transfer, set over, and deliver" unto the insurance company, its successors and assigns, "that certain lease now owned by us, dated February 12, 1910, given by said John H. Peterson and Ona R. Peterson, as lessors, to Railway Exchange Building Company, lessee, * * * together with all our right, title, and interest in and to said lease and the rental reserved within, to have and to hold the said lease, together with all our rights and privileges therein and thereto belonging, unto said the Northwestern Mutual Life Insurance Company, its successors and assigns, forever."

The instrument recited that the assignment was made as "additional security" for the payment of the note, and continued: "The right is hereby reserved and granted to said John H. Peterson and Ona R. Peterson to collect the rentals arising from the premises above described as they accrue under said lease and to enforce the collection of the same, and also to enforce all other provisions of said lease, so long as there is no default whatever on the part of said Peterson in the payment of any installment of interest upon the note and mortgage above described, or in the payment of any part of the principal thereof, and so long as there is no breach of any condition contained either in said note or in said mortgage." It was stipulated that, if default should occur in payment upon the note and mortgage, the insurance company would refrain from "the exercise of its rights as assignee of said lease for the period of 60 days after such default or breach of condition, at the end of which 60 days, however, said company shall be at liberty to enforce its security under said lease if such default or breach of condition shall then continue"; also that, if it should become necessary for the insurance company, for the protection of its interests, "to assert its rights as assignee of said lease and to enforce payment of the indebtedness subsisting under said note and mortgage, or any part thereof, from the leasehold interests hereby assigned, it will account and pay over to said John H. Peterson and Ona R. Peterson all amounts realized by it from rents collected under said lease in excess of the then existing indebtedness of said Peterson to said company," together with the amounts advanced for taxes and insurance and such costs as the insurance company might be obliged to incur "in thus enforcing its rights as assignee of said lease." It is provided that upon the performance of all conditions and obligations of the note and mortgage, and upon full discharge by Peterson of all debt to the insurance company, the "assignment" should be of no effect, and thereupon and in that event the insurance company was to "reassign" to Peterson and wife "all of its right, title, and interest in and to said lease, now acquired under and by virtue of this assignment."

It is alleged that foreclosure proceedings were had and the insurance company became purchaser and owner of the leasehold interest of the les-

sors in the ground lease and of the real property. The trust company denied that prior to the purchase by the insurance company of the lessors' rights under the lease, or at any other time, it took possession as the successor of the interest of the lessee, and denied that it was in possession at the time the plaintiff alleged it became owner of the rights of the lessors. It is alleged that when the insurance company took the assignment of lease from Peterson it had knowledge of the deed of trust executed by the building company to the trust company; that in July, 1916, the building company defaulted in payment of interest upon its bonds and became hopelessly involved and unable to care for the building: that the building company applied to the trust company, trustee under the mortgage, to take charge of the building and premises, collect the rentals, pay operating expenses, and hold the surplus for the benefit of the bondholders; that, with a view of preserving the property from injury, the trust company collected the rents and paid the necessary expenses incident to the care of the building, and notified all persons that it had taken over the custody and control of the building and would collect rental and pay expenses; that defendant also advised the insurance company that it would turn over and deliver the Peterson portion of the building to the insurance company, and that the trust company notified the insurance company that it would not assume any obligation of the lease: that when the portion of the property sold was delivered to the purchaser, the Peterson portion of the property was on June 12, 1917, returned to the building company, from which latter date the trustee had no further connection with the same.

The District Court gave judgment to the trust company and against the insurance company, and the insurance company brought the case here.

The secretary of the trust company testified that about July 13, 1916, the building company had become delinquent in the payment of interest on maturing bonds, rents, and taxes, and in the requirements with respect to the sinking fund; that the trust company as trustee requested payment; that on July 13, 1916, the president of the building company told the trust company that it was impossible to proceed, and turned over the possession, management, and control of the building to the trust company as trustee, stating that the building company was unable to continue, was insolvent, and that all rents had been attached. Witness said that the trust company then took charge, and that upon taking possession the trust company as trustee notified the tenants in future to pay rents to the trust company as trustee; that an agent was employed by the trust company to collect the rents and to look after and care for the building, and that all parties in interest were notified in writing of the action by the trust company. Under date of July 22, 1916, Peterson and wife and Ainsworth, as trustee for a bank to which Peterson owed money, and also as agent, and the insurance company, were notified of default of the building company, and that in order to protect the interests of the holders of the bonds the building company had voluntarily surrendered to the trust company as trustee, which latter company was in possession of the premises. The letter advised the addressees that the trust company desired it distinctly understood "that it assumes no responsibility in reference to the said lease and will pay no rent other than as the income from the Peterson property will provide therefor."

It also appears that on July 10, 1916, a resolution was adopted by the building company, wherein the trust company was requested to take possession of the property covered by the deed of trust under article 4 of the deed of trust, and to proceed to carry out the provisions of article 4. Article 4 referred to provides that, if the building company shall default in payment of interest, or in the performance of the other conditions of the mortgage, and such default shall continue for one month, then the building company, upon demand of the trustee, should forthwith surrender to the trustee actual possession, and that the trustee shall be entitled forthwith, with or without process of law, to enter upon and take possession of the mortgaged property. There was also a provision in article 10 of the deed of trust that the trustee would not " in any way be responsible for the conse-

quences of any breach on the part of said building company, or any of the covenants herein contained, or any act of said company or its agents or servants."

Platt & Platt and Hugh Montgomery, both of Portland, Or., for plaintiff in error.

Dolph, Mallory, Simon & Gearin, of Portland, Or., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge, (after stating the facts as above). The question argued is whether or not the mortgagee, which took over the property described in the lease, made itself liable for the payment of the rent to the lessor, or the assignee of the lessor. The position of the plaintiff in error is that the fact of possession is a reasonable and practical test, and that a mortgagee, who chooses to take possession and enter into the leased premises, and use and enjoy the same, becomes in effect, whether or not in name, the tenant, and as such should bear the burdens of the tenant. On the other hand, defendant in error takes the ground that under the facts of the case there never has been privity of estate between the trust company and the insurance company, and that the obligations of the Peterson lease to the building company, to which the trust company was not a party, cannot be imposed upon the trust company. It is in evidence that the trust company protested against assuming the attitude of an assignee, and by word and act endeavored to relieve itself from the obligation of paying rentals under the lease for the time for which recovery is asked in this action. This, in our opinion, becomes a relevant consideration.

[1, 2] We agree that as a general proposition, if one other than the lessee is in possession of premises, paying rent, the law will presume that the lease of the property has been assigned to such person. On the other hand, such a presumption is not irrefutable; it may be overcome by proof that the relationship is a different one. Leadbetter v. Pewtherer, 61 Or. 168, 121 Pac. 799, Ann. Cas. 1914B, 464. The doctrine of estoppel may not be invoked against one who can show that the one in possession never has accepted an assignment of the lease, and that no privity of estate has been created whereby he is bound to the performance of covenants running with the land. Welsh v. Schuyler, 6 Daly (N. Y.) 412. Privity of estate, by which one is made liable to perform covenants that run with land, requires a transfer of the legal title by the lessee and the acceptance of it by the assignee. Journeay v. Brackley, 1 Hilt. (N. Y.) 451.

[3] The facts here, however, are that under article 4 of the lease in question, as heretofore quoted in substance, the trustee was in a position where its action in taking possession was had as the representative of the building company. The trustee had in mind care, preservation, and custody of the property, collection of rentals, and payment of expenses. It had a physical possession; yet such possession was really for the building company. The trustee had no part in the lease made by Peterson to the building company, and undoubtedly did not intend to make itself the tenant of Peterson, or of the successor in interest of

Peterson. It would therefore be inequitable to hold that, because the trustee took the steps it did, acting under the provisions of the mortgage, for the protection of the bondholders, at the solicitation of the building company, it placed itself under a liability upon the covenants of the lease.

A circumstance to be noted, too, is that the mortgage or deed of trust was put on record before the insurance company made the loan to Peterson and took the mortgage as security, and the insurance company had notice of the mortgage of the trust company. When Peterson assigned the lease to the building company, he executed a mortgage securing the same mortgage debt that was secured by the real estate. The provisions in the instrument, that upon full performance of all the conditions and obligations of the note and mortgage the assignment should be void and of no effect, afford additional ground for regarding the assignment as in reality a mortgage securing the same mortgage debt that the real estate secured. Again, in the foreclosure proceedings which were instituted by the insurance company against Peterson, the lease assigned is described as a mortgage, and upon sale the real estate and the leasehold interest were sold as a whole.

From many cases which have considered the question, we refer to those which appear to be based upon the better reasoning. In Johnson v. Sherman, 15 Cal. 287, 76 Am. Dec. 481, the court, through Chief Justice Field, said:

"The question, then, is this: Is Sherman liable for the rents from the date of his possession in March, 1855, to the date of his assignment to Jeffries in August following? The evidence discloses that this assignment was taken as security for the loan of $5,000. All the parties admit that this was its object. Sherman so alleges under oath in his answer. Brown testifies to the same thing. The lessors were aware of the character of the transaction, and were not, therefore, in a position to assert rights founded upon the absolute form of the instrument. The admissibility of parol evidence to show that a conveyance or assignment absolute upon its face was intended as a mortgage is no longer an open question in this state. * * * The assignment is then to be treated, though absolute on its face, as in fact a mortgage, and the question of law thus presented is whether, as mortgagee of the term in possession, Sherman was liable upon the covenants of the lease. In England there is no doubt that he would be held liable. There a mortgage is in fact, and not merely in form, a conveyance of the estate, vesting in the mortgagee a title to the premises, defeasible until condition broken, but absolute afterward. The covenants of the lease running with the land, their performance of course devolves upon the assignee, whether the assignment be taken as security or by way of purchase. Williams v. Bosanquet, 1 Brod. & Bing. 72. In New York, where a mortgage is treated as a mere security, the legal title remaining in the mortgagor, the mortgagee out of possession is not bound as assignee, but in possession he is liable as such. The possession is there considered as in some respect affecting the title. * * * In this state a mortgage is regarded as a mere security, and not as a conveyance vesting in the mortgagee any estate in the land either before or after condition broken. As a security for a debt, default in the payment does not change its character. Payment after default operates to discharge the lien, equally with payment at the maturity of the debt. * * * Nor can possession under the mortgage affect the nature of the mortgagee's interest; it does not abridge or enlarge his interest, or convert what was previously a security into a seizing of the freehold; it does not change the relation of creditor and debtor, or impair the estate of the mortgagor, but leaves the rights and interests of the parties exactly as they existed pre-

viously. Possession taken by consent of the owner, or by contract with him, may confer rights as against third parties; but they are independent and distinct from any rights springing from the mortgage, from which they derive no support. In thus holding we only carry the doctrine that a mortgage is a mere security for a debt to its legitimate and logical result."

The court treated the title to the property as remaining with the mortgagor, whether possession was taken or otherwise, and concluded that it advanced only one step beyond the New York cases by holding that a mortgagee of a term in possession is not liable as assignee upon the covenants of a lease. In Dutton v. Warschauer, 21 Cal. 609, 82 Am. Dec. 765, the court, again speaking through Chief Justice Field, affirmed the principle announced in Johnson v. Sherman, supra.

In Cargill et al. v. Thompson et al., 57 Minn. 534, 59 N. W. 638, the court assumed that one Sprague, mortgagee, was in possession under an assignment by way of mortgage of rentals to Sprague, and that Sprague collected the rents and entered the premises and made repairs, yet held that the mortgage created no privity between Sprague and plaintiff in the case; that the mortgage passed no estate in the land, but gave only a lien. To the argument that the situation was different with the mortgagee in possession, that he has such an estate as makes him liable upon the covenants running with the land, the court, through Gilfillan, C. J., cited the New York cases (Astor v. Hoyt, 5 Wend. 603; Moffatt. v. Smith, 4 N. Y. 126) as not altogether satisfactory, and adopted the rule in California, as announced in Johnson v. Sherman, supra. The court said:

"We do not see how the mere act of the parties, of going into possession and consenting to or acquiescing in it, can have the effect to pass the mortgagor's estate to the mortgagee. The latter, being let into possession under and because of the mortgage, is in only for the purpose of it, to wit, for security. *. * * The fact that the possession is added, as a further security, to the security which the mortgage of the title gives him, cannot change the lien of the mortgage into an estate. The right of the mortgagee remains a mere lien, though the power to enforce it against the profits issuing from the lands is placed in his hands by letting him into possession. If an estate arises in the mortgagee, it is real estate, though the debt of which it is only an incident is personalty. Can the debt and the right of possession be severed? May the mortgagee assign the debt as personalty, and retain the right of possession as realty?"

The court assumed that an absolute assignment of the rents for the entire term of the lease is in effect an assignment by the lessor of the lease itself, bringing the assignee into privity with the lessee, putting him for the purposes and term of the lease in the place of the lessor, subjecting him to the burdens of the covenants on the part of the lessor, and entitling him to the benefits of the covenants on the part of the lessee enforceable during the term, and held that the assignee became the owner of rents, to apply them for the benefit of the lessor toward satisfaction of his debt. "His relation to them," said the court, "is the same as that of the mortgagee of the land towards the legal title—that of one holding a lien; and, if he can maintain in his own name a suit to collect them, it must be as a trustee. He is not therefore, an assignee so as to be liable on the covenants in the lease."

In Calvert et al. v. Bradley et al., 16 How. 580, 14 L. Ed. 1066, the

Supreme Court, through Justice Daniel, discussed "the much-controverted and variously decided doctrine as to the responsibility of the mortgagee of leasehold property, pledged as security for a debt, but of which the mortgagee has never had possession, for the performance of all the covenants to the fulfillment whereof a regular assignee of the lease would be bound," and cited the leading English cases, to which Justice Field afterwards adverted in Johnson v. Sherman, supra. The court, however, did not decide the question immediately before us, having gone no farther than to rule that a mortgagee who has not taken possession of the demised premises is not liable for rent, and that the law in this respect was different in New York from what it was in England.

Washburn on Real Property, § 747, refers to the rule that in England a mortgagee of the lessee's interest is regarded as an assignee and liable accordingly, though he may not have entered, as concurred in by the courts of New Hampshire and perhaps some other states. But he points out that in California, because of the peculiar character of mortgages in that state, it has been held that the mortgagee of a term would not be liable upon the covenants in the lease. He regards the weight of authority as seeming to be that such mortgagee becomes responsible as assignee when he takes possession under his deed, but not before.

In McKee v. Angelrodt, 16 Mo. 283 (1852), the Supreme Court of Missouri considered the liability of a person to whom a lease has been assigned by way of mortgage for the payment of rent to the lessor, without such assignee ever having possession of the premises leased. The court reviewed the leading English cases, and recognized the general rule that a mere legal ownership does not make the assignee liable in such cases, without some evidence of his possession or actual agency, and regarded the better rule as holding that the mortgagee of the term of years, who has not taken possession, has not all the legal right, title, and interest of the mortgagor, and therefore is not treated as a complete assignee, chargeable upon the real covenants of the assignor. The court did not attempt to state what rule should be applied where the circumstances show that the mortgagee had taken possession, but their general view seems to have been that, to create any liability to payment, possession in the assignee is essential, and yet that, where there has been assignment of a lease by way of mortgage, such assignment becomes a mere security for the payment of the money, and cited Eaton v. Jaques, Doug. 455, to support the argument that where there has not been possession the assignee of a lease by way of mortgage is not liable to the lessor for rent, and quoted Lord Mansfield in this way:

"The mortgagee never asks whether the rent be paid; he only looks to his security, and when the principal and interest be paid he reassigns. But, if the plaintiff is right, a mortgagee might be called upon, years after such reassignment, for arrears or breaches of covenant during reassignment. The consequences would be terrible."

In Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420, 28 L. Ed. 415, the Supreme Court held that under the laws of Oregon a mortgage is a mere security for a debt, and that the mortgagee is not entitled to the

rents and profits until he gets possession under a decree of foreclosure, and that if a mortgage is not a conveyance, and the mortgagee is not entitled to possession, his claim to the rents is without support.

We regard the assignment of the lease of the Peterson estate to the building company as really but a mortgage, and, as already indicated, as securing the same mortgage debt that had been secured by the real estate. The instrument recites that upon—

"full performance of all the conditions and obligations of said note and mortgage, and upon the full discharge by said Peterson of all indebtedness to said insurance company accruing under said note and mortgage, this assignment shall be void and of no effect, and thereupon and in that event said company is to reassign to said John H. Peterson and Ona R. Peterson all of its right, title, and interest in and to said lease now acquired under and by virtue of this assignment."

While taking possession becomes an important matter in determining the rights of the parties, nevertheless it is not conclusive evidence of a complete assignment, so as to make the assignee chargeable on the covenants of the assignor. When it is remembered that there was no assignment of the lease to the trust company, and that the relationship between the trust company and the building company was in its representative capacity, and was taken with the intention of protecting the bondholders, for whom it acted, and at the special instance of the building company, we conclude that there never was a privity of estate between the trust company and the insurance company, and that it would be unjust to impose the burdens of the lease made by Peterson to the building company upon the trust company.

The judgment is therefore affirmed.