Argued September 13; affirmed November 9, 1933; rehearing
denied January 2, 1934

# BARDE ET AL. *v.* PORTLAND NEWS
# PUBLISHING CO.
### (26 P. (2d) 787, 28 P. (2d) 216)

*Dan E. Powers* and *Guy C. H. Corliss,* both of Portland (John C. Veatch, of Portland, on the brief), for appellant.

*Herbert Swett,* of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for respondents.

KELLY, J. On December 3, 1921, plaintiffs and The Telegram Publishing Company, a corporation, executed a written lease, wherein plaintiffs were designated as the lessors and The Telegram Publishing Company the lessee. By its terms, said lessors leased and demised unto said lessee lots 3 and 4 in block numbered 255 in Portland, Multnomah county, Oregon, the same being located at the northwest corner of 11th and Washington streets in said city of Portland. The

term of said lease was 25 years. The lessors agreed to construct a building under certain plans and specifications upon said premises and the rental was to be based upon certain stipulated valuations of the real estate and the costs of the construction of the building. This building was constructed and the lessee took possession under the lease, the rental then being fixed at $24,000 per annum payable monthly.

Thereafter, The Telegram Publishing Company went into bankruptcy.

On June 17, 1928, based upon the report of the trustee in the matter of the bankruptcy of said publishing company, an order was duly given and made by the referee in bankruptcy which, by its express terms, authorized and empowered said trustee in bankruptcy on payment of $226,000 in cash to sell and convey to one David S. Lofgren, trustee, all of the properties, good will and business of said bankrupt including choses in action, book accounts, but excluding money on hand and in transit; said sale to be consummated as of the close of business on June 18, 1927, said sale to include an assignment and transfer of the lease covering the property occupied by said bankrupt under a lease.

On June 20, 1927, pursuant to said order, said trustee executed a written instrument selling, assigning, transferring and delivering to said David E. Lofgren, trustee, said property, assets and good will of said bankrupt, and at said time said trustee also executed an instrument in writing, selling, assigning and transferring to said Lofgren, trustee, all the rights, properties and interests of said lessee in and under said lease.

On the 21st day of June, 1927, said Lofgren, James Crossley and Pauline Stockton, as incorporators, organized The Portland Telegram, as a corporation

under and pursuant to the laws of the state of Oregon, with its principal office in Portland, Multnomah county, Oregon, and said last named corporation succeeded to the interests of the said Lofgren, trustee, in the assets of said bankrupt, The Telegram Publishing Company.

On the 31st day of August, 1927, the plaintiffs herein, said corporation The Portland Telegram and J. E. Wheeler and L. R. Wheeler executed a written agreement, reciting that said lease first herein mentioned had been executed; that said corporation, The Portland Telegram had succeeded to the right, title and interest of the lessee therein named and that as an incident to said succession, and in part consideration thereof, plaintiffs had consented to a modification of said lease as thereinafter set forth. Said modification reduced the rental reserved in the said premises for the first ten-year period remaining unexpired on September 1, 1927, in the annual sum of $4,200, by changing the base valuation of $200,000 for the land, whereon the Telegram building is erected, to $147,500, and in granting to The Telegram Company the right to make any desired physical changes which it might desire in the leased building provided said changes should not impair the value of the building, conflict with any law or ordinance or render the premises liable to any claim of lien therefor. Said instrument also provided that with reference to the succession of The Portland Telegram the reduction of rental and the right to make alterations, said agreement should not become operative unless and until executed by said J. E. Wheeler and L. R. Wheeler and that the obligations of the said J. E. Wheeler and L. R. Wheeler, as originally expressed, should continue with the substitution of The Portland Telegram as lessee.

Said instrument also contained the following provision:

"The said reduction of rental and the right of alteration shall not affect the validity or operation of any clause of said lease save with respect to rental, and each and every provision of said lease is hereby ratified and confirmed, and The Portland Telegram, by its signature to one of the duplicate originals hereof, specifically assumes each and every obligation of the original lessee under said lease, save that the rental for the first ten year period is modified as above set forth, and the right of alteration is granted."

By an instrument bearing date, May 4, 1931, executed by Herbert Fleishhacker and C. H. Brockhagen, who then owned and controlled all of the capital stock of The Portland Telegram, and bearing the O. K. of Harry W. Ely, president of defendant, defendant agreed to purchase all of said capital stock for the sum of $750,000. It was therein agreed that the defendant would immediately form or cause to be formed a corporation under the laws of the state of Oregon, to be known as The News-Telegram Publishing Company, or some similar name, which corporation should take over all of the physical properties and other assets of defendant and The Portland Telegram, Inc., and cause to be issued first mortgage bonds in the sum of $500,-000, secured by all of the assets of every nature and description of defendant and The Portland Telegram and said new corporation, said bonds to be delivered to said Fleishhacker and Brockhagen at par to apply upon the purchase price of said capital stock, the balance of said purchase price to be paid as follows: The sum of $50,000 in cash, and the purchaser to assume the difference between current assets and current liabilities of said The Portland Telegram, Inc.,

which in no event shall exceed the sum of $200,000 in favor of current liabilities. In the event said difference exceed the sum of $200,000, such excess shall be paid by Herbert Fleishhacker and C. H. Brockhagen and, in the event said difference shall be less than the sum of $200,000, such deficit shall be paid by the purchasers to said Herbert Fleishhacker and C. H. Brockhagen, but in no event shall the total purchase price exceed the sum of $750,000, provided, however, that in estimating said indebtedness and/or liabilities of said The Portland Telegram, Inc., all paid up subscriptions shall not be considered in said estimation, but shall be assumed by the purchaser. The receipt of $50,000 was acknowledged therein as the first payment of the purchase price.

On the 25th day of May, 1931, Herbert Fleishhacker and C. H. Brockhagen as parties of the first part, the defendant as party of the second part, and The Portland Telegram as party of the third part, executed an agreement supplementing and modifying said agreement last hereinabove mentioned, wherein, among other things, it was agreed that said Fleishhacker and Brockhagen would reimburse defendant on account of the payment of interest to the holders of the first mortgage 6 per cent gold bonds amounting to $485,000 to be issued by defendant for the period of May 1, 1931, to and including May 1, 1932, in an amount representing the difference between 5 per cent and 6 per cent interest on said $485,000; and would reimburse defendant for interest paid on said bonds for a period of four days from May 1, 1931; to and including May 4, 1931, being the period elapsed between the date of said bonds and the date the second party actually took over the assets of the third party. It was further agreed therein that Fleishhacker and Brockhagen

would hold defendant harmless from liabilities arising out of certain litigation; and would also hold defendant "harmless from any and all claims whatsoever kind or nature arising out of any lawful contract, debt or other liability which may in the future be presented against The Portland Telegram and not shown on the books of said corporation at the close of business on the 4th day of May, 1931".

In said supplemental agreement of May 25, 1933, the following express agreement on defendant's part is set forth:

"The second party (defendant herein) agrees: (1) To assume any and all liabilities of The Portland Telegram shown on its books as of the close of business on May 4, 1931, including any and all liabilities which the third party may be subject to under a certain indenture of lease by and between Rose Barde et al and The Telegram Publishing Company, a corporation, dated the 3rd day of December, 1921, and all assignments and supplementary agreements attached thereto, which said lease covers the building hereto used and occupied by The Portland Telegram and described as 421 Washington Street, Portland, Oregon."

On the said 25th day of May, 1931, a bill of sale was executed by said corporation, The Portland Telegram, as party of the first part, wherein defendant herein is named as the party of the second part and wherein and whereby said party of the first part sold, assigned and delivered unto said defendant herein as the party of the second part certain specified personal property consisting of newspaper presses, composing machines, furniture fixtures and equipment, stock on hand, book accounts, Associated Press membership, stocks, bonds and other securities of The Portland Telegram, and wherein the following clause is set forth

in describing the property which is the subject-matter of said transfer, "and all property rights of every kind and description belonging to The Portland Telegram whether or not herein specifically described".

Listed as an item of the "Fixed Assets" in a statement of the assets and liabilities of The Portland Telegram, attached to said bill of sale and marked exhibit A, is the following: "Leasehold Improvements ($) 2,968.36."

The Portland Telegram paid the rent accruing after the modification of said lease until May, 1931. The defendant paid the prescribed monthly rental as agreed upon in said modification of said lease for the months of May and June, 1931. Defendant collected rent from subtenants in said building.

Defendant makes three assignments of error on the part of the circuit court:

1st. In finding that the bill of sale establishes the intent of the parties to pass the leasehold interest.

2d. In finding that defendant accepted said bill of sale as a conveyance to defendant of the leasehold estate.

3d. In the conclusion that privity of estate had been created between plaintiffs and defendant and for that reason defendant was liable for rent.

We are unable to agree with defendant with respect to either of these assignments.

■ Construing the agreement of date, May 4, 1931, and May 25, 1931, together with the bill of sale, we find that originally the stockholders of The Portland Telegram agreed to sell the stock of said corporation to defendant for a given consideration, part of which was to be paid in cash, and the remainder in deferred payments; $500,000 of which was to be paid in bonds to be issued by a new corporation. Then three weeks

later a supplemental agreement was made reducing the amount of the bonds to be issued and approving the issuance of said bonds by defendant instead of a new corporation. In this supplemental agreement defendant expressly agreed to assume all liabilities to which The Portland Telegram might be subject under the modified lease in suit. As stated, this supplemental agreement was in writing, expressed the consideration and was signed by the party sought to be charged. It is an admitted fact that at the time of the execution of said supplemental agreement, The Portland Telegram was liable for the rental prescribed in said modified lease. The acceptance of said bill of sale by defendant constituted an acceptance of "all property rights of every kind and description belonging to The Portland Telegram". Said leasehold right was included therein.

The learned trial court, therefore, was not in error in the conclusion that privity of estate had been created between the plaintiffs and the defendant and that for that reason defendant was liable for rent.

Defendant cites the case of *Northwestern Mutual Insurance Co. v. Security S. & T. Co.*, 261 Fed. 575, wherein it is held that the trustee in a mortgage of leasehold property was not liable on the covenants of the lease for ground rents. In that case the mortgagor had erected a building on the leasehold property; and the trustee, under the terms of the mortgage and at the mortgagor's request took possession of the building, paid the running expenses and collected the rents for the benefit of the bondholder. There, the circuit court refer to the case of *Teal v. Walker*, 111 U. S. 242 (4 S. Ct. 420, 28 L. Ed. 415), wherein the supreme court held that under the laws of Oregon, a mortgage is a mere security for a debt and that the mortgagee is not

entitled to the rents and profits until he gets possession under a decree of foreclosure; and then the circuit court say:

"We regard the assignment of the lease of the Peterson estate to the building company as really but a mortgage, and, as already indicated, as securing the same mortgage debt that had been secured by the real estate."

No mortgage is involved in the issues presented upon the appeal in the case at bar. A somewhat similar relationship is disclosed in the case of *Merchant's Ins. Co. et al. v. Mazange,* 22 Ala. 168, also cited by defendant. There it was held that the court's order before sale giving a builder possession of leased premises, who was enforcing his claim for constructing a building upon said premises, was ineffective to constitute an assignment of the lease. The distinction between that and the case at bar is obvious.

The case of *Griffin v. W. L. Pfeffer Lumber Co.,* 285 Ill. 19 (120 N. E. 583), also cited by defendant, holds that an agreement by the tenant was necessary in order to render effective a modification of a ten-year lease; and that merely the action of an assignee of the lease in turning over the premises to the appellee and the appellee's action in taking possession and occupying the same were not sufficient to constitute an assignment of said lease.

In the case of *Welsh v. Schuyler,* 6 Daly (N. Y.) 412, also cited by defendant, the doctrine is announced that where it is affirmatively established that there was no written assignment and therefore no estate vested in the defendant that showing overcomes the presumption arising from defendant's possession of the premises that there was an assignment. In the case

at bar, the presumption arising from defendant's possession is confirmed by instruments above set out.

*East Coast Stores, Inc., et al. v. Cuthbert, et ux.,* 101 Fla. 25 (133 So. 863), is a case where no written assignment of the lease was shown. The lease, being for five years, came within the provisions of section 5660 (3787) Compiled General Laws of Florida requiring such a lease to be in writing, and the court held that a valid assignment thereof would have been required to be in writing. There being no written assignment, the court further held that privity of estate had not been shown.

*Nally v. Reading,* 107 Mo. 350 (17 S. W. 978), and *Chicago Attachment Co. v. Davis Sewing Machine Co.,* 142 Ill. 171 (31 N. E. 438, 15 L. R. A. 754), are cases where the assignments were oral and hence insufficient.

*Mayhew v. Hardesty,* 8 Md. 479, also cited by defendant, holds that a mortgagee of the leasehold interest after default of the mortgagor and an assignment of the equity of redemption to him, is liable on the real covenant whether he became possessed or occupied the premises or not. In that jurisdiction, after default by the mortgagor, the mortgagee becomes entitled to possession. That case also holds that a bond of conveyance executed by the mortgagee, under the circumstances above outlined, did not transfer the mortgagee's entire interest or term and hence was insufficient to constitute the grantee therein an assignee of the lease. The facts in this case are very dissimilar to those in the instant case.

The defendant also cites the case of *Brewer v. Dyer,* 7 Cush. (Mass.) 337. That was an action of assumpsit. The court held that the proper and only remedy of a lessor against the assignee of a lease for rent is by action of covenant or debt upon the deed. The

court also held that inasmuch as the original lease was under seal it could be assigned only by deed; and that the agreement between the lessee and the defendant, being a simple contract, not under seal and not containing apt and proper words of assignment, was insufficient to constitute an assignment of the lease.

In the case at bar the bill of sale bears the corporate seal of The Portland Telegram and contains the words, ''bargain, sell and deliver''.

Moreover, by a later case in Massachusetts, we find the following pronouncement:

''The defendant insists that the lease, being under seal, could be assigned only by an instrument under seal. This rule, applied to an assignment of the instrument itself, as a contract, is well settled at law. Wood v. Partridge, 11 Mass. 488, Brewer v. Dyer, 7 Cush. 337. Bridgham v. Tileston, 5 Allen 371. If, therefore, a leasehold estate can be transferred only by an assignment of the instrument by which it was created, this objection must be held to be decisive.

''But we do not so understand the law. A lease, by whatever form of instrument it is made, conveys to the lessee an estate or interest in the land. He may in turn convey to another any subordinate interest, or his entire estate, in any appropriate form without regard to the form in which he acquired his own title. The leasehold estate may be transferred by devise; by sale on execution as a chattel; Gen. Sts. c. 133, Sec. 49; or sale by an administrator as personal assets. In all these cases the purchaser becomes bound to the lessor to pay the rent and perform the covenants that run with the land, because the law imposes that obligation upon him by reason of his succession to the estate of the lessee. The same result follows from any transfer by the lessee of his entire estate. A seal is not essential to such transfer, even of a lease for more than seven years.'' Sanders v. Partridge, 108 Mass. 556.

In the case at bar, we have a writing expressing the consideration and signed by the lessee.

The case of *Culver v. VanValkenburgh,* 60 Or. 447 (119 P. 753), also cited by defendant, holds that an assignment of a lease for more than a year must be in writing. In a later case, this court, speaking through the late Mr. Justice Eakin, said:

"The question to be determined in this case relates to the obligation of the assignee of a lease. There does not seem to be any conflict in the authorities bearing upon this subject. The assignee of a lease is bound to fulfill the obligations thereof according to the terms of the lease.

"'It is a well-settled rule that, by virtue of privity of estate between the assignee of a leasehold and the lessor, such assignee becomes personally liable to the lessor, while he holds the estate as assignee, for the performance of the lessee's covenants, which run with the leasehold estate.' 18 Am. Eng. Ency. of Law (2 Ed.) p. 668.

"To the same effect is this provision in 24 Cyc., page 1179:

"'Where a lessee assigns his whole estate in all the demised premises, the assignee is liable to the lessor for the whole of the rent reserved in the lease.'

"The same principle is applied in Culver v. Van-Valkenburgh, 60 Or. 447 (119 Pac. 753); Leadbetter v. Pewtherer, 61 Or. 168 (121 Pac. 799, Ann. Cas. 1914B, 464). And he thereby becomes the party to the lease and is liable for the whole term." Moline v. Portland Brewing Co., 73 Or. 532 (144 P. 572).

In a still later case, we find this statement made by the late Mr. Chief Justice Burnett:

"The owner of the fee may create an estate for years in the land by a lease to his tenant, reserving a rent. The tenant, being thus the owner of an estate in land, may of right, unless restrained by the terms of the

lease, convey that estate entirely to another, who thus becomes the assignee of the lease, assuming all its obligations, including the payment of the rent. By virtue of the transfer of this entire identical estate originally created by the owner of the fee, there springs up by operation of law a privity of estate between the original landlord and the subtenant, that is to say, they are both concerned in the same estate, the one as its creator and the other as its assignee." Backus v. West, 104 Or. 129 (205 P. 533).

■ Defendant states that its ownership of all the stock in The Portland Telegram Company did not destroy the existence of such corporation or create any legal identity between defendant as a stockholder and The Portland Telegram Company, itself. As we view the case, it is unnecessary to pass upon the effect of the absorption by defendant of all of the capital stock of The Portland Telegram Company, the taking over of all its property and assets of every kind and description and of its discontinuance of that company's corporate existence; but, assuming that the corporate entity of The Portland Telegram Company continued as distinct from that of its stockholders, certainly the contract between such stockholders and defendant, concerning the purchase of such stock, could in nowise affect plaintiffs herein. Nothwithstanding that, it was urged by defendant on oral argument that the assumption by defendant of the modified lease in suit could not be considered as effective because by so doing the maximum amount of the consideration fixed in said agreement between said stockholders and defendant would be exceeded. Defendant, itself, says:

"What equities may arise between defendant and Fleishhacker and Brockhagen or what contract obligations exist between them are matters which in no way concern these plaintiffs."

This argument that an assumption of the lease in suit is controverted by the clause fixing a maximum sum to be paid by defendant rests upon the premise that the modified lease is a liability, which premise is only vaguely, if at all, supported by defendant's showing that the building is not suitable for the purposes of publishing a newspaper therein. Moreover, the agreement, containing the restriction mentioned as to the maximum amount of consideration for said transfer of capital stock, was itself modified by a supplemental agreement which contained no such restrictive language.

■ It is also argued by defendant that the indemnity against liability upon contracts not shown on the books of The Telegram Company on the 4th of May, 1931, which Fleishhacker and Brockhagen promised defendant, includes liability on the modified lease in question. This indemnity is not granted by the lessee, The Telegram Company. It cannot constitute a reservation from the grant by The Telegram Company of the leasehold interest or of any other interest. It is just as consistent with the view that the defendant is liable under terms of the modified lease as with the contrary view. If this indemnity applies to the lease in suit, it certainly dissipates the claim that there was no such lease, even as the express description of the lease in the supplemental agreement of May 25, 1931, controverts defendant's claim that it understood at all times that there was no such lease.

■ It is urged by defendant that the officers of The Portland Telegram, who executed the contract and bill of sale on May 25, 1931, had then ceased to have the slightest legal connection with it. The bill of sale is accompanied by a certificate dated May 26, 1931, of one of defendant's attorneys in his capacity as notary

public, which recites that C. H. Brockhagen and A. M. Perry, being duly sworn, said that C. H. Brockhagen is the president and A. M. Perry is the assistant secretary of The Portland Telegram; that the seal affixed to said instrument is the corporate seal of said corporation, and that the instrument was signed and sealed in behalf of said corporation by authority of its board of directors.

We hold that the execution of said instrument was a valid act of said corporation, first, because it was the culminating step in the transaction, which began by negotiations looking toward the transfer of Brockhagen and Fleishhacker's corporate stock; second, because Brockhagen's resignation as an officer of The Portland Telegram, which had been tendered, was not accepted; and third, because defendant, as sole owner of all of the corporate stock of The Portland Telegram, has ratified it.

■ Defendant contends that no effect should be given to the amendment of plaintiffs' complaint, which was made after trial of the issues herein. To this we cannot assent. The trial court did not err in permitting an amendment to conform to the facts proven. It appears to have been made pursuant to a stipulation.

■■ With respect to the collection by defendant of rent from subtenants, while it was orally argued by defendant that this was done pursuant to a stipulation of the parties, such stipulation does not appear of record. Counsel for defendant may have referred to an oral stipulation. This cannot be considered. In defendant's brief, nothing is said about the stipulation above mentioned, but it is stated that the rent so collected was retained in a separate fund for the use and benefit of ' plaintiffs. Such a course does not appear to have been

assented to by plaintiffs; and hence, its legal effect would still be as stated.

■ By taking possession of the demised premises, causing the bill of sale to be recorded, paying the exact amount of monthly rent prescribed in the modified lease, $1,816.66, paying the taxes upon the leased premises, collecting rent from subtenants, and executing the written agreement assuming the lease in suit, defendant accepted the assignment of said property and established privity of estate between plaintiffs and defendant.

■ We are asked by plaintiffs to make a finding that there is privity of contract between plaintiffs and defendant. This borders too closely upon granting a nonappealing party affirmative relief, not given by the trial court, to be justified when unnecessary to the proper disposition of the case as presented.

The judgment of the circuit court is affirmed.

BEAN, J., did not participate in this decision.

---

Petition for rehearing denied January 2, 1934

ON PETITION FOR REHEARING
(28 P. (2d) 216)

KELLY, J. By a petition for rehearing, we are reminded that an acceptance is not required to render effective the resignation of an officer of a corporation.

In the case at bar, the record discloses that after Mr. Brockhagen tendered his resignation he executed the supplemental contract of May 25, 1931, on behalf of the Portland Telegram and on said date, he and Mr. Perry, acting as officers of the Portland Telegram, executed and affixed the seal of that corporation to

the bill of sale and made oath that they were such officers. In the light of these facts, we held that between the corporation and a third party their action, as such officers, was not invalid merely because the record also discloses that prior to the execution of said instruments Mr. Brockhagen had tendered his resignation which had not been accepted.

We do not wish to be understood as holding, in the absence of some provision, either of statute, by-law or of the resignation itself, requiring an acceptance, that, between the officers of a corporation, the acceptance by the corporation of a resignation of one of its officers is necessary in order to render such resignation effective.

Only questions argued and considered on the original hearing are presented by defendants' motion for rehearing. To these again we have given careful consideration with the result that we adhere to our former holding.

The petition for rehearing is denied.