## MACALESTER'S ADMINISTRATOR *v.* MARYLAND & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.

Argued April 15, 16, 1885.—Decided May 4, 1885.

Under the statutes of Maryland of 1834, ch. 241, 1835, ch. 395, 1838, ch. 396, and 1844, ch. 281, and the instruments executed pursuant to those statutes, the tolls and revenues of the Chesapeake and Ohio Canal Company are mortgaged to the State of Maryland, to secure the repayment of money lent by the State to the company, and the payment of dividends and interest on the stock subscribed for by the State ; subject, in the first place, to the appropriation of so much of the tolls and revenues as is necessary to keep the canal in repair, to provide the necessary supply of water, and to pay the salaries of officers and annual expenses ; and, in the second place, to a mortgage to trustees to secure the payment of certain bonds of the company. And, at the suit in equity of the State and of such trustees, even

before the State has taken possession under its mortgages, a general creditor of the company, who at the time of contracting his debt had notice of the provisions of the statutes and of the mortgages, will be restrained from levying on money deposited by the company in a bank, and needed to meet such necessary expenses.

This was an appeal from a decree in equity of the Circuit Court of the United States for the District of Maryland, restraining a judgment creditor of the Chesapeake and Ohio Canal Company from levying upon money deposited by that company in a bank in Baltimore. The case appeared by the record to be as follows :

The Chesapeake and Ohio Canal Company was incorporated, and constructed a canal from Georgetown in the District of Columbia to Cumberland in the State of Maryland, under statutes of Virginia and Maryland of 1824, confirmed by the act of Congress of March 3, 1825, ch. 52. 4 Stat. 101, 793–802.

Under the statute of Maryland of 1834, ch. 241, the State of Maryland lent to the company the sum of $2,000,000, to be used in the construction of the canal; and the company, on April 23, 1825, to secure the repayment of that sum and interest, made to the State a mortgage of " all and singular the lands and tenements, capital stock, estates and securities, goods and chattels, property and rights, now or at any time hereafter to be acquired, and the net tolls and revenues of the said company." No part of that loan, or of the interest accrued thereon, was ever paid.

Under the statute of Maryland of 1835, ch. 395, the State subscribed and paid for 30,000 shares, and under the statute of 1838, ch. 396, 13,750 shares, together constituting a majority of the stock in the company ; first receiving from the company, as required by each statute, an instrument in writing under seal, by which the company guaranteed to the State the payment, out of the profits of the work, of six per cent. yearly on the money paid to it by the State under that statute, until the clear annual profits of the canal should be more than sufficient to discharge the sums which the company should be liable to pay annually to the State, and should be adequate to a dividend of six per cent. among its stockholders, and further agreed that

thereafter the State should receive, upon the stock by it subscribed for, a proportional dividend upon the profits of the work as declared from time to time. The company never paid to the State any part of such dividends or interest.

On May 15, 1839, the company, as required by the statute of 1838, and to secure the payment to the State of interest for three years at the yearly rate of five per cent. on stock issued by the State under that statute to the amount of $1,375,000, made another mortgage to the State of its lands and tenements, property and effects, as well as of its net tolls and revenue. No part of this interest was paid.

The statute of Maryland of 1844, ch. 281, authorized the company to borrow money and issue its bonds to the amount of $1,700,000, to provide means for completing its canal to Cumberland, and contained the following provisions:

Sec. 2. "The bonds so issued as aforesaid shall appear on the face of the same to be preferred liens on the revenues of said company, according to the provisions of this act, and with the assent of the said company, as is hereinafter provided for; the said bonds, without any preference or priority over each other on account of date, shall be preferred liens on the revenues and tolls that may accrue to the said company from the entire and every part of the canal and its works between Georgetown and Cumberland, which are hereby pledged and appropriated to the payment of the same, and the interest to accrue thereon, in the manner hereinafter mentioned: Provided, however, that this State shall in no case be bound or held responsible for the payment of said bonds, or the interest thereon: And provided further, that the president and directors of the said company shall from time to time, and at all times hereafter, have the privilege and authority to use and apply such portion of said revenues and tolls as in their opinion may be necessary to put and keep the said canal in good condition and repair for transportation, provide the requisite supply of water, and pay the salaries of officers and agents, and the current expenses of the said company."

Sec. 4. "That the rights and liens of this State upon the revenues of the Chesapeake and Ohio Canal Company shall be

held and considered as waived, deferred and postponed in favor of the bonds that may be issued under the aforegoing sections, so as to make the said bonds, and the interest to accrue thereon, preferred and absolute liens on said revenues, according to the provisions of the second section of this act, until said bonds and interest shall be·fully paid."

SEC. 5. "·That semi-annually in each year, as the same shall be payable, said Chesapeake and Ohio Canal Company shall pay the interest on the bonds constituting·preferred liens as afore-·said, to the party or parties respectively entitled thereto, or to their agent or agents authorized to receive the same; and as soon as the net revenues of said company, arising from the canal and its works between Georgetown and Cumberland as afore-said, shall be more than sufficient to pay the interest that may become due and in arrear upon said bonds, with the costs of remittance and exchange, if there be any, and such further sum, not exceeding $5,000 annually, as may be·necessary to pay the interest on the bonds or certificates of debt heretofore issued by said company to the creditors of the Potomac Company, for claims adjusted under the twelfth section of the charter of the Chesapeake and Ohio Canal Company; the said company shall annually pay to the Treasurer of the Western. Shore of this State, who shall receive the same under the re-·sponsibilities of his office, the surplus net revenues as aforesaid, to such amount as may be necessary as an adequate sinking fund, not exceeding the sum of $25,000 a year, on an average. of years, dating from the first day of January next after the completion of the canal to Cumberland; which sum or sums shall from time to time be invested by said treasurer, and be accumulated by him as a sinking fund to pay the principal of said bonds, until a sufficient amount is so paid and accumulated for that purpose."

SEC. 6. "That the president and directors of the Chesapeake and Ohio Canal Company be, and they are hereby, authorized to execute any deed, mortgage or other instrument of writing, that may hereafter be deemed necessary or expedient to give the fullest effect to the aforegoing provisions."

SEC. 7. "That the Chesapeake and Ohio Canal Company

shall execute to this State and deliver to the Treasurer of the Western Shore of Maryland a further mortgage on the said canal, its lands, tolls and revenues, subject to the liens and pledges by the aforegoing provisions of this act made, created or authorized, as an additional security for the payment of the loan made by this State to the said company under the act of December session eighteen hundred and thirty-four, chapter two hundred and forty-one, and the interest due and in arrear and which hereafter may accrue thereon; which mortgage shall be submitted to the Attorney-General of this State, and be approved by him as sufficient in law."

On January 8, 1846, the company, pursuant to § 7 of that statute, and as an additional security for the payment of the $2,000,000 before lent by the State of Maryland to the company, under the statute of 1834, and interest, executed a mortgage of all its lands and tenements, its canal and appurtenances, "embracing the entire undertaking, and the tolls and revenues that may hereafter accrue," and all its property and rights; "subject, nevertheless, to all and singular the liens and pledges by the provisions of the before-mentioned act of eighteen hundred and forty-four, chapter two hundred and eighty-one, made, created or authorized, or that have been or may hereafter be made, created, given or granted by the said Chesapeake and Ohio Canal Company, or the president and directors thereof, under or in pursuance of the provisions of said act, which said liens and pledges are in nowise to be lessened, impaired or interfered with by this deed, or by anything herein contained, and subject, also, to all the other provisions of said act."

On June 5, 1848, the company executed a mortgage, reciting the last provisions of the second section, as well as the provisions of the fourth and sixth sections of the act of 1844, and conveying to William W. Corcoran and others, trustees, "the revenues and tolls of the entire and every part of the canal and its works between Georgetown and Cumberland," to secure, after the payment of debts existing or thereafter contracted for repairs on the canal and providing the requisite supply of water, and for salaries and current expenses, first, the pay-

ment of interest on the bonds issued by the company under
the act of 1844, second, the payment of interest to creditors of
the Potomac Company, third, the creation of a sinking fund
for the redemption of those bonds; with the further provisions
"that so long as the said canal company shall comply with
their agreement by paying all the interest upon said bonds as
the same falls due, and by providing an adequate sinking fund
in the manner specified according to the provisions of the said
act for the final redemption of the said bonds, they shall retain
the management of the canal and its works, and collect and
receive the revenues and tolls; but if they fail to comply with
these conditions from any cause except a deficiency of revenue
arising from a failure of business without fault on the part of
said company, said fault to be made to appear by the grantees
aforesaid, then the grantees may demand and shall thereupon
receive possession, and shall appropriate the said tolls and rev-
enues in the manner hereinbefore provided."

In 1854, Charles Macalester, a citizen of Pennsylvania, re-
covered in an action in the Circuit Court of the United States
for the District of Maryland, upon a debt not secured by any
of the aforesaid mortgages, a judgment for $5,471.37 and
costs. In 1867, Macalester having died, the appellant took
out letters of administration upon his estate in Maryland, and
became as such administrator plaintiff in that action, and judg-
ment was entered for him against the company, and he in 1880
issued an attachment upon that judgment, and caused it to be
laid in the hands of a bank in Baltimore as garnishee upon
moneys standing to the credit of the company on the books of
the bank. Those moneys were in the possession of the bank
on deposit, and were exclusively made up of the tolls and rev-
enues received by the company in the course of its business,
and were sufficient to pay the judgment debt, interest and
costs, but were required to meet the necessary expenses of put-
ting and keeping the canal in proper navigable condition, after
payment of the salaries of officers, and supplying the necessary
quantity of water for purposes of navigation.

In 1882, Macalester's administrator having applied to the
court for a judgment of condemnation of so much of the

moneys in the hands of the garnishee as would satisfy his judgment debt, interest and costs, bills in equity to restrain further proceedings by him were filed by the State of Maryland, and by the trustees under the mortgage of 1848, setting forth the facts above stated, and also alleging that Macalester and his administrator " had each notice, before acquiring any of their respective rights of action in the premises, of all the liens, charges and duties affecting the revenues, tolls and property of the said Chesapeake and Ohio Canal Company, and were especially affected with knowledge that such portions of the revenues and tolls of said Chesapeake and Ohio Canal Company, as were necessary to put and keep the canal of the said company in good condition and repair for transportation, provide the requisite supply of water, and pay the salaries of officers and agents of the said company, were dedicated and set apart to such purposes by contract with the State of Maryland, and were under said contract exclusively applicable to said purposes."

The administrator filed a demurrer to each bill, which was overruled, and a final decree entered against him, and, upon his motion at the same term, the court ordered *nunc pro tunc* that the two suits be consolidated, " but so that the validity, force and effect of neither of said decrees shall be by this order affected or impaired."  He then appealed to this court.

*Mr. Stewart Brown* [*Mr. Arthur George Brown* was with him on the brief] for appellant.

*Mr. Charles J. M. Gwinn* and *Mr. Charles B. Roberts*, Attorney-General of Maryland, for appellees.

Mr. JUSTICE GRAY, after making the foregoing statement of facts, delivered the opinion of the court.

An ordinary mortgagee of real estate, who has not taken possession under his mortgage, is not entitled to the rents and profits as against the mortgagor or his attaching creditors ; and the same rule holds good in the case of a mortgage by a railroad, canal or bridge corporation of its tolls and revenues,

which provides a mode in which the mortgagee shall take possession, and until that mode is availed of, leaves the tolls and revenues in the control of the mortgagor, to be disposed of as he sees fit. *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459; *Gilman* v. *Illinois & Mississippi Telegraph Co.*, 91 U. S. 603; *American Bridge Co.* v. *Heidelbach*, 94 U. S. 798.

But by the statutes of the State of Maryland, relating to the Chesapeake and Ohio Canal Company, and the mortgages executed pursuant to those statutes, the application of the tolls and revenues of the canal was not left to the disposal of the corporation.

The State of Maryland, regarding the construction and maintenance of the canal as an object of great importance and benefit to the public, had lent to the canal company large sums of money, and subscribed for a majority of its stock, and, to secure its loans and investments, had taken from the company mortgages upon the canal and all its tolls and revenues.

By the statute of 1844, ch. 281, the State authorized the company, in order to obtain additional means, to issue bonds secured by mortgage to trustees of its net tolls and revenues; the State waived its own lien upon the gross revenues so far only as to subordinate it to the lien of that mortgage; subject to that lien, the State took a new mortgage as additional security for the repayment of its original loan to the company: and the statute, under and pursuant to which these two mortgages were executed, and to which each was made subject, expressly provided that the company should have authority to use and apply so much of the gross tolls and revenues as might be necessary to keep the canal in repair, to provide the requisite supply of water, and to pay salaries and current expenses.

The necessary effect of this arrangement was, for the promotion of the public object, as well as for the ultimate benefit of the mortgagees, to appropriate the tolls and revenues in the first instance to the payment of necessary repairs and expenses.

The debt of the judgment creditor in this case was a gen-

eral debt of the company, and not a bond secured by the trust mortgage, nor a debt contracted for repairs, or salaries, or other current expenses. It is alleged in the bills, and admitted by the demurrers, that the creditor, at the time of contracting his debt, had notice of all the charges, liens and duties affecting the tolls and revenues, and especially of the provision by which they were appropriated, in the first instance, to the payment of necessary expenses. And the money of the corporation, which he seeks to apply to the payment of his debt, is needed for those expenses.

It follows that the judgment creditor has no equity, and that the State of Maryland, and the trustees for bondholders, whose security will be affected by the diversion of this money from its lawful object, are entitled to injunctions.

This conclusion accords with the adjudication of the Court of Appeals of Maryland in *Brady* v. *State*, 26 Maryland, 290, and with the opinions expressed by that court in earlier and later cases. *Boyd* v. *Chesapeake & Ohio Canal*, 17 Maryland, 195; *Virginia* v. *Chesapeake & Ohio Canal*, 32 Maryland, 501.

*Decree affirmed.*