UNITED STATES of America, Plaintiff,

v.

CAROLINA EASTERN CHEMICAL COMPANY, INC., Defendant.

Civ. A. No. 85–1344–15.

United States District Court,
D. South Carolina,
Columbia Division.

July 23, 1986.

Glen E. Craig, Asst. U.S. Atty., Columbia, S.C., for plaintiff.

Willis Fuller, Jr., Charleston, S.C., for defendant.

## ORDER

HAMILTON, District Judge.

This declaratory judgment action brought pursuant to 28 U.S.C. § 2201 seeks to determine whether the government or the defendant is entitled to certain funds, amounting to Thirty-seven Thousand Ninety-nine and 80/100 Dollars ($37,099.80) currently held in a certificate of deposit in the South Carolina National Bank. Trial of this case occurred on April 23, 1986. On May 8, 1986 this court issued an order in the case, finding that the defendant Carolina Eastern Chemical Company, Inc. was entitled to all the funds at issue. The matter is presently before the court upon the government's motion, filed May 16, 1986, for reconsideration of the judgment, pursuant to Rule 52(b), Fed.R.Civ.P., and/or motion to alter or amend a judgment, pursuant to Rule 59(e), Fed.R.Civ.P.

The facts and circumstances from which this litigation arose were stipulated before trial by the parties and are amply set forth in the court's May 8 order. Accordingly, they will not be repeated herein, particularly because they are not relevant to the legal issues currently before the court. In contrast, however, the procedural history of this litigation commands significant mention, and is detailed below.

In essence, this case presents the question whether certain Payment-in-Kind (PIK) payments received by a farmer McCutchen for his agreement to forego planting crops may be claimed by the government after the farmer has defaulted under several Farmers Home Administration (FmHA) loans. Prior to the April 23 trial the parties submitted proposed orders, containing proposed findings of fact and conclusions of law. The government's proposed order, and trial brief, treated, almost exclusively, the question whether the PIK payments were "proceeds" of crop collateral, so as to entitle the government to these funds under several security agreements between McCutchen and the FmHA. Indeed, only scant footnote mention was made in the government's proposed order of a second theory, involving certain real estate mortgages executed by McCutchen in favor of the government, under which the government might claim the PIK payments as rents and profits of the land. During the short, two-hour trial of this case the government pursued, and argued solely the theory that the PIK payments should be treated as "proceeds" of crop collateral. The government presented no evidence pertaining to the mortgage theory, other than the mortgages themselves. In fact no mention of the mortgage theory would probably have been made at all at trial if

this court had not *sua sponte* inquired if any foreclosure proceedings had been instituted by the government. The government responded that no foreclosure proceedings had been commenced.

After carefully reviewing the exhibits and briefs, considering counsel's arguments and studying the law, the court concluded that the government was not entitled to the funds, and issued the May 8 order. Most of this order dealt with the relatively novel question presented under the "proceeds" theory. However, for purposes of comprehensiveness the May 8 order also addressed, in approximately one and-a-half pages, the "mortgage" theory, even though that theory had not been pressed by counsel for the government at trial. Indeed the court had serious doubts whether the government was seriously pursuing this secondary theory.

Eight days after judgment had been entered for the defendant, the government, obviously discontented with the initial decision, filed its motion for reconsideration and/or amendment of the judgment. The government's motion does not challenge the court's ruling with respect to the "proceeds" theory. Instead, the government urges the court to consider substantial evidence that it had not brought before the court at trial pertaining to the "mortgage" theory, and to alter/amend the original judgment.[1] The government draws the court's attention to Paragraph 17 of mortgages which provides:

> SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, ..., the Government at its

option, with or without notice, may: ... (b) ... take possession of, operate or rent the property ...

The government argues that because the McCutchens were in default from 1983, and the government had the right under paragraph 17 to take possession of the land, the government may now claim the "rents and profits" of the land earned since 1983, notwithstanding the fact that the government never instituted foreclosure proceedings or occupied the land.[2] In support of its position, the government now brings before the court evidence that a nationwide injunction, *see Coleman v. Block,* 580 F.Supp. 194 (D.N.D.1984) had precluded the government from earlier commencing foreclosure proceedings. Additional attachments to the government's motion for reconsideration include: (1) the "Kane Memorandum," a memorandum prepared by a United States Department of Agriculture attorney concerning the *Coleman* injunctions; (2) An affidavit of Ike Gibbons, County Supervisor, South Carolina Farmers Homes Administration; (3) A May 16, 1986 Notice of Acceleration of Debt; (4) An April 24, 1984 Pretermination Notice; (5) A letter (and accompanying material) from the FmHA to Mr. McCutchen, dated February 21, 1986; and lastly, and exhaustively; (6) A notification to the court that on July 15, 1986 the government had instituted foreclosure proceedings.

The defendant, Carolina Eastern Chemical Company, Inc., filed a Memorandum In Opposition to the government's motion. Defendant's memorandum does not address the merits of the court's prior ruling on the "mortgage theory," does not include

---

**1.** Indeed, the government admits in its Reply to Defendant's Opposing Memorandum, at 2 that "We did not call attention to these matters prior to judgment."

**2.** In fact, even at the time this order is being written the government continues to submit post-trial evidence to this court indicating that on July 15, 1986 the government initiated foreclosure proceedings. To say that the court finds this practice highly irregular would be an understatement. First, the court is unconvinced that recently begun foreclosure proceedings are relevant to the question of the government's

entitlement, under the mortgages, to rents and profits earned in 1983 while the mortgagor remained in possession. Second, the cumulative impact of all of this post-trial evidence is to convince the court that the government is simply engaging in post-trial jockeying to improve its position. Obviously, this court did not initiate this lawsuit in the first place, but rather the government, as plaintiff commenced this litigation. Insofar as the government's case may have been deficient in certain respects because of premature timing of the suit, it is the government that must bear the burden of poorly timed trial strategy.

additional evidence relating to such theory, and does not respond to the government's newly raised arguments and evidence. Rather, defendant simply objects that the Federal Rules of Civil Procedure confer no license on the government "to retry its case upon a different theory and upon different evidence merely because it is displeased with the outcome of the first trial." *Defendant's Memorandum In Opposition,* at 2.

In essence then the government's motion raises two distinct considerations. The threshold question is whether, and to what extent, if any, the court may consider the government's newly submitted evidence when there has not been the slightest contention that this evidence was unavailable at the trial. Only if an affirmative response is indicated for this threshold matter must the court consider the second question involving the merits of its prior ruling on the "mortgage theory."

## I. RULE 52(b), AMENDMENT OF FINDINGS BY THE COURT, AND RULE 59(e), NEW TRIALS: ALTERATION OR AMENDMENT OF JUDGMENT

Rule 52(b), Fed.R.Civ.P. provides in part that:

Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59....

■ The primary purpose of Rule 52(b) is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and judgment entered thereon. Wright & Miller, *Federal Practice and Procedure:* Civil § 2582 at 722 (1971). A party who failed to prove his strongest case is not entitled to a second opportunity by moving to amend a finding of fact and a conclusion of law. *Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc.,* 188 F.Supp. 248, (N.D.Ill.1960), *aff'd,* 298 F.2d 36 (7th Cir.1961); *Davis v. Mathews,* 450 F.Supp. 308, 318 (E.D.Cal.1978). *Cf. Caracci v.*

*Brother International Sewing Machine Corp.,* 222 F.Supp. 769 (E.D.La.1963), *aff'd,* 341 F.2d 377 (5th Cir.1965) (Rule 52(b) motions are more favored when made before any indication is given by the court as to the decision). Thus, a Rule 52(b) motion is intended to correct manifest errors of law or fact or to present newly discovered evidence. *Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224 (N.D.Ill.1976).

Rule 52 allows such a motion to be coupled with a motion for a new trial under Rule 59. The circumstances under which new trials may be granted in bench trials are referenced in Rule 59(a)(2) which provides in part:

A new trial may be granted to all or any of the parties and on all or part of the issues ... (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

■ Rule 59(a)(2) has been interpreted as allowing a new trial to be granted in a nonjury action only if a new trial might be obtained under similar circumstances in a jury action under subdivision (a)(1). *United States v. 5.77 Acres of Land,* 3 F.R.D. 298 (E.D.N.Y.1944). Those generally recognized grounds for a new trial include: that the verdict is against the weight of the evidence, that the damages are excessive, or that for numerous other reasons the trial was not fair. *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940). A motion for a new trial in a nonjury case or a petition for a rehearing should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons. *Hager v. Paul Revere Life Insurance Co.,* 489 F.Supp. 317, 321 (E.D.Tenn.1977).

As stated in Wright & Miller, *Federal Practice and Procedure:* Civil § 2805 at 39,

> A principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result ... [3] For similar reasons a party may not seek a second trial on the basis of a theory not urged at the first trial (citing *Zweig v. Bethlehem Supply Co.,* 186 F.2d 20 (5th Cir.1951).

Ultimately, the decision on a motion for a new trial rests within the sound discretion of the trial court. *City of Richmond v. Atlantic Co.,* 273 F.2d 902 (4th Cir.1960).

■ With the foregoing principles in mind the court turns to an examination of the instant case. As noted above, see note 1 *infra,* the government candidly admits that it failed to bring such matters relating to the "mortgage theory" before the court at trial. Because such evidence was available at that time, the only inference this court can draw from the failure to present such evidence is that the government elected "to put all it's eggs in one basket," i.e., to argue only the "proceeds theory." Having been unsuccessful on this theory the government now zealously attempts to relitigate the case from another strategy. This the court should not and will not permit.

The court finds the instant case analogous to the situation existing in *Aerated Products Co. of Los Angeles v. Aeration Processes,* 95 F.Supp. 23, 30 (S.D.Cal.1950) in which the court, denying a new trial motion, reasoned:

> But liberal though the courts are in interpreting [the federal rules], they do not permit a litigant to seek a new trial upon the ground that there existed evidence which the counsel who tried the case failed to present to the Court because of his *failure to evaluate it properly.* (emphasis in original).

**3.** In this vein, the framers of the Federal Rules intended that provisos of Rule 61 permitting the court to disturb a judgment only when a refusal to do so is "inconsistent with substantial justice"

As the above referenced authorities indicate, circumstances such as the present do not warrant a new trial.

The court is further of the opinion that to grant a new trial in this case would be to establish unmanageable and limitless precedent. The court must ask the government where all this would end if disappointed litigants could, after judgment, keep bombarding the court with evidence pertinent to *yet another* legal strategy or theory. Doubtless there exist some cases which can be tried on half a dozen differing theories. Although the possibilities for repeated attacks on the judgment would be substantial, the resources [and most assuredly the patience] of the district court would not be. Neither the constitution, nor the federal rules envisage such a piecemeal approach to litigation. The government is entitled to one fair trial [one bite at the apple], and because this court is convinced the government has already enjoyed that, the government's motion under Rule 52(b) and 59(e) is denied.

## II. THE MORTGAGE THEORY

■ Although as noted above this court need not fully address the merits of the government's claim under the real estate mortgage because of the ruling denying the motion for a new trial, to a large extent the court has already considered such evidence. In denying the new trial motion the court examined the evidence to see if, in fact, such evidence would justify a different judgment in the case. Only if the court concluded such evidence would not support a different result could the court be certain that the denial of the new trial motion was not "inconsistent with substantial justice," Rule 61, Fed.R.Civ.P. Because the court is unpersuaded that a consideration of the additional evidence dictates a different judgment, the court stands by its earlier ruling on the mortgages issue, with some elaboration given for purposes of appellate review.

or when the "substantial rights of the parties" are affected should be read in conjunction with Rule 59.

The relevant portion of the mortgage agreement provides:

Borrower does hereby grant, bargain, sell, release, and assign unto the Government, with general warranty, the following property situated in the State of South Carolina, County of Lee, together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, *the rents, issues, and profits thereof and revenues and income therefrom* ... (emphasis supplied).

The right to rents and profits of mortgaged real estate depends on title, the right to possession, and the actual possession of the property. *See Teal v. Walker,* 111 U.S. 242, 4 S.Ct. 420, 28 L.Ed. 415 (1884). The general rule is that a mortgagor in possession of the mortgaged premises, whether by permission of the mortgagee, where the latter is entitled to possession, or by virtue of his own inherent right, where the mortgagor is regarded as owner of the property with the right of possession, is entitled to the earnings, rents and profits of the property. *Id.,* 111 U.S. 242, 4 S.Ct. 420, 28 L.Ed. 415. Put another way, the mortgagee is not entitled to the rents and profits as a legal incident to, or as a legal right growing out of, his mortgage. *Macalester v. Maryland,* 114 U.S. 598, 5 S.Ct. 1065, 24 L.Ed. 233 (1885); *Sellars v. First Colonial Corp.,* 276 S.C. 548, 280 S.E.2d 805, 806 (1981). To entitle a mortgagee to rents and profits, he must in some legal form attempt to reduce them to possession. Indeed, the mortgagor is not liable to account to the mortgagee for rents and profits received, even though the mortgagee may have the right to take possession upon condition broken, and the condition has, in fact, been broken. *Teal v. Walker,* 111 U.S. 242, 4 S.Ct. 420, 28 L.Ed. 415.

In other words, a mortgagee out of possession is not entitled to the rents and profits until he takes some step to assert his rights, *Haussmann v. Colonial Trust Co.,* 23 F.Supp. 213 (S.D.N.Y.1938), as by impounding the rents, or by taking actual possession himself or through a receiver. *Freedman's Saving & Trust Co. v. Shepherd,* 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163 (1888).

The court has been unable to find any South Carolina case raising the precise point at issue here. However, the general rule as stated in 59 Corpus Juris Secundum (C.J.S.) *Mortgages* § 317 is that:

Ordinarily when there is provision made for a pledge or assignment of the rents the mortgagee acquires only a potential lien thereon or, according to the decisions, the mortgagee acquires only a security interest, which must be perfected or consummated by the mortgagee by some definite action looking toward possession and subjection, and the mortgagor's mere default does not transfer the rents to the mortgagee, notwithstanding an assignment clause. (citations omitted).

■ It is undisputed that at no time until July 15, 1986, over two years after the "PIK payments" i.e., rents/profits had been earned, and over two months after judgment had been entered in this case, did the government initiate foreclosure proceedings.[4] Although a nationwide injunction against foreclosure proceedings might have prevented the government from acting earlier, the disruption to FmHA foreclosures was expressly contemplated by the court in *Coleman v. Block,* 580 F.Supp. 194 (D.N.D.1984), and does not furnish an adequate basis to vary the general principles outlined herein.

ACCORDINGLY, the government's motion for reconsideration of the court's May 8, 1986 judgment, Rule 52(b), and/or motion to alter or amend the judgment pursuant to Rule 59(e), is hereby denied.

IT IS SO ORDERED at Columbia, South Carolina, this 23rd day of July, 1986.

---

**4.** The government also had not taken any other steps to perfect or consummate its security interest under the mortgages.

In addition, it is also worth noting that of the five tracts of land for which McCutchen had mortgages, three of the mortgages were, in fact, Small Business Administration mortgages. Foreclosure on the SBA mortgages would not have been prevented by the *Coleman* injunction.