Charles KOCH, Nancy Koch, Tim Koch, David Koch, Michael Koch, Jennifer Koch, and Brenna Marie Koch, d/o/b 6–17–89 and Andrew Christopher Koch, d/o/b/ 12–17–91, minor children, by and through their next friend and natural father, Tim Koch, and Allen David Koch, d/o/b 8–23–95, a minor, by and through his next friend and natural father, David Koch, Plaintiffs,

v.

SHELL OIL COMPANY and Feed Specialties Co., Inc., and Occidental Chemical Corp., f/k/a Diamond Shamrock Corp., Defendants.

No. Civ.A. 92–4239–DES.

United States District Court, D. Kansas.

May 15, 1998.

Order Vacating Opinion in Part on Reconsideration July 7, 1998.

Robert V. Eye, Irigonegaray & Associates, Topeka, KS, Ronald R. Hein, Stephen P. Weir, Hein & Weir, Chartered, Topeka, KS, for Plaintiffs.

Hal D. Meltzer, Gregory N. Pottorff, Turner & Boisseau, Chartered, Overland Park, KS, James P. Nordstrom, Fisher, Patterson, Sayler & Smith, Topeka, KS, Edward L. Keeley, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, KS, Bryce A. Abbott, Martin, Churchill, Blair, Hill, Cole & Hollander, Chtd., Wichita, KS, William R. Smith, Law Offices of Wm. R. Smith, Wichita, KS, for Defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of defendant Shell Oil Company (Doc. 239) and the motion of Feed Specialties Co., Inc. (Doc. 245) for summary judgment.

### I. BACKGROUND

From April 1979 through October 1981, plaintiff Charles Koch fed his dairy cows a feed additive known as Rabon Oral Larvicide Premix ("R.O.L.Premix"). R.O.L. Premix contains Rabon Oral Larvicide, a product made from Rabon. Rabon is manufactured and sold by Shell Oil Company ("Shell") and Occidental Chemical Corporation ("Occidental"). R.O.L. Premix is distributed by Feed Specialties, Inc. ("Feed Specialties").

Beginning in May 1979, and continuing until July 1986, a significant number of Mr. Koch's cattle died. He purchased his last batch of R.O.L. Premix in September 1981, and ceased using the product at the end of October 1981 because he suspected that the product was involved in the death of his cattle. Mr. Koch himself has experienced health problems since the 1980's, which he attributes to his exposure to Rabon.

In March 1991, experts developed a test which could detect residual Rabon in fat tissue. In April 1991, these experts confirmed the presence of Rabon in tissue taken both from Mr. Koch, and from one of Mr. Koch's bulls that had died in 1981. On November 25, 1991, Mr. Koch filed suit against Shell and Feed Specialties, alleging that Rabon caused the death of a substantial portion of his dairy herd, as well as physical injuries to himself, his wife and children, and his grandchildren.

### II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c) The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1985). The substantive law identifies which facts are material. *Id.* at 248. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1985). The movant need not negate the nonmovant's claim. *Id.* at 323.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1985). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250.

## III. DISCUSSION

■ Defendants Shell and Feed Specialties ("defendants") initially contend that plaintiff Charles Koch's claim is barred by the two-year statute of limitations found in Kan.Stat.Ann. § 60–513. As a general rule, the cited statute requires that a tort action be brought within two years from the date the act giving rise to the cause of action first causes substantial injury. Kan.Stat.Ann. § 60–513(a), (b). However, if the fact of injury is not reasonably ascertainable until sometime after the initial tortious act, the limitation period commences at the time the fact of injury becomes reasonably ascertainable to the injured party. Kan.Stat.Ann. § 60–513(b). Ascertainment of the "fact of injury" for purposes of triggering the discovery rule contained in Kan.Stat.Ann. § 60–513(b) includes not only ascertainment of the injury itself, but also the cause of the injury. *See, e.g., Gilger v. Lee Const., Inc.*, 249 Kan. 307, 820 P.2d 390, 400–01 (1991) (plaintiffs suspected carbon monoxide gas poisoning caused their illness, but medical opinions differed; evidence was controverted as to when injury was reasonably ascertainable and when plaintiffs realized their health problems were associated with the alleged improperly vented furnace).

■ Where evidence of the date on which a plaintiff should have reasonably ascertained he suffered substantial injury caused by the defendant is in dispute, it is a material issue of fact which should be resolved by the jury. *See Gilger v. Lee Construction*, 820 P.2d at 401. *See also Hatfield v. Burlington Northern R.R. Co.*, 747 F.Supp. 634, 639 (D.Kan. 1990) (denying third-party defendant's motion for summary judgment where third-party plaintiff presented unrefuted evidence that it did not know the cause of its alleged injury until more than two years after the accident).

In this case, it is uncontroverted that Charles Koch first incurred substantial injury no later than October 30, 1981, with the death of one of his Holstein cows. It is also uncontroverted that he was aware of the injury on that date. However, he contends he was not aware of the cause of the injury until April 1991, after laboratory experts determined the presence of Rabon in the tissue samples he submitted.

Defendants contend that Charles Koch should reasonably have been aware of the cause of the injury in October 1981. This

court rejected a similar argument by Feed Specialties in a Memorandum and Order issued March 18, 1993. Defendants, however, contend that facts revealed in Charles Koch's April 10, 1996, deposition compel a different conclusion. Specifically, defendants refer to Charles Koch's testimony that his veterinarian, Dr. Atterbury, commented to him in October 1981 "I didn't know you was feeding Rabon, there is your liver problems." Since Charles Koch was specifically told that the Rabon was the cause of the fatal liver problems, defendants contend his cause of action accrued in October 1981 and was barred by the limitations period in October of 1993.

■ In response, plaintiffs refer the court to their previously filed briefs. After careful examination of these documents, however, the court could find no argument or evidence addressing defendants' use of Charles Koch's April 1996 deposition testimony. As the non-movant, plaintiff is required to go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. This plaintiffs have not done. Accordingly, Rule 56(c) requires the court to enter summary judgment against plaintiffs for failing to sufficiently establish a genuine issue of material fact with regard to the date on which Charles Koch should have reasonably ascertained that the damage to his cattle was caused by Rabon. Summary judgment is denied, however, with respect to Charles Koch's claims for damages arising from harm to his person.

Defendants advance a similar argument with respect to the claims of Charles Koch's wife and children. According to the defendants, Charles Koch's wife and children should reasonably have been aware of the cause of their injuries by March 6, 1991, the date laboratory experts discovered the presence of Rabon in the tissue samples submitted by Charles Koch. As this was more than two years prior to the filing of the motion to add Mr. Koch's wife and children, defendants contend their claims are barred by the two-year limitations period of Kan.Stat.Ann. § 60–513.

Plaintiffs concede the tissue samples were tested on or about March 6, 1991, but present evidence that information regarding the test results was not provided to any Koch family members until April 1996. Defendants' argument, that the laboratory experts were plaintiffs' agents and thus knowledge of the test results were imputed to plaintiffs immediately upon completion of the tests, is unpersuasive. The court therefore finds that a genuine dispute exists as to the date on which plaintiffs should have reasonably ascertained they suffered substantial injury caused by defendants. As such, it is a material issue of fact which should be resolved by the jury. *See Gilger v. Lee Construction,* 820 P.2d at 401.

**IT IS THEREFORE BY THE COURT ORDERED** that the motion of defendant Shell Oil Company (Doc. 239) and the motion of Feed Specialties Co., Inc. (Doc. 245) for summary judgment are granted in part and denied in part. Defendants' motions are denied with respect to all claims and all parties except Charles Koch's claim for damages arising from harm to his cattle.

### ORDER VACATING OPINION IN PART ON RECONSIDERATION

This matter is before the court on plaintiffs' Motion for Reconsideration (Doc. 307) and defendant Shell Oil Company's Motion for Reconsideration (Doc. 308). For the reasons set forth below, plaintiffs' motion is granted and defendant's motion is denied.

### I. BACKGROUND

From April 1979 through October 1981, plaintiff Charles Koch fed his dairy cows a feed additive known as Rabon Oral Larvicide Premix ("R.O.L.Premix"). R.O.L. Premix contains Rabon Oral Larvicide, a product made from Rabon. Rabon is manufactured and sold by Shell Oil Company ("Shell") and Occidental Chemical Corp. ("Occidental"). R.O.L. Premix is distributed by Feed Specialties, Inc. ("Feed Specialties").

Beginning in May 1979 and continuing until July 1986, a significant number of Mr. Koch's cattle died. He purchased his last batch of R.O.L. Premix in September 1981, and ceased using the product at the end of October 1981 because he suspected that the product was involved in the death of his cattle. Mr. Koch himself has experienced health problems since the 1980's, which he attributes to his exposure to Rabon.

In March 1991, laboratory experts developed a test which could detect residual Rabon deposits in fat tissue. In April 1991, these experts confirmed the presence of Rabon in tissue taken both from Mr. Koch and from one of Mr. Koch's bulls that had died in 1981. On November 25, 1991, Mr. Koch filed suit against Shell and Feed Specialties, alleging that Rabon caused the death of a substantial portion of his dairy herd, as well as physical injuries to himself, his wife and children, and his grandchildren.

Plaintiffs and defendant Shell now move for reconsideration of the court's May 15, 1998, Memorandum and Order dismissing Charles Koch's claim for damages arising from harm to his cattle.

## II. DISCUSSION

■ A motion for reconsideration provides the court with an opportunity to correct "manifest errors of law or fact and to review newly discovered evidence." *Dees v. Wilson,* 796 F.Supp. 474, 475 (D.Kan.1992), *aff'd,* 13 F.3d 405 (1993). A court has discretion whether to grant or deny a motion for reconsideration. *Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir.1988). There are three circumstances in which a court may appropriately grant a motion for reconsideration: (1) where the court made a manifest error of fact or law; (2) where there is newly discovered evidence; and (3) where there has been a change in the law. *Renfro v. City of Emporia, Kan.,* 732 F.Supp. 1116, 1117 (D.Kan.), *aff'd,* 948 F.2d 1529 (1991).

■ A motion for reconsideration is not to be used as a vehicle for the losing party to rehash arguments previously considered and rejected. *Voelkel v. GMC,* 846 F.Supp. 1482, 1483 (D.Kan.), *aff'd,* 43 F.3d 1484, 1994 WL 708220 (10th Cir.1994). Indeed, "[a] party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend." *Paramount Pictures Corp. v. Video Broadcasting Sys., Inc.,* No. 89–1412–C, 1989 WL 159369, at *1 (D.Kan. Dec.15, 1989) (citing *United States v. Carolina Eastern Chem. Co., Inc.,* 639 F.Supp. 1420, 1423 (D.S.C. 1986)). Such motions are therefore not appropriate if the movant intends only that the court hear new arguments or supporting facts. *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied,* 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).

■ "The party moving for reconsideration has the 'burden to show that there has been a change of law, that new evidence is available, or that reconsideration is necessary to correct clear error or prevent manifest injustice.'" *Mackey v. IBP, Inc.,* No. 95–2288–GTV, 1996 WL 417513 at *2 (D.Kan. July 22, 1996)(quoting *International Bhd. of Teamsters, Local 955 v. Sambol Meat Packing Co.,* No. 92–2338–JWL, 1993 WL 393010, unpublished op. at 2 (D.Kan. Sept. 30, 1993)). Here, neither party alleges a change in law or the availability of new evidence. Accordingly, their arguments require the court to decide whether reconsideration is necessary to correct any clear error or prevent manifest injustice.

■ Shell contends that Charles Koch's claims for damages to his cattle and to his person arose out of the same operative facts. Therefore, Shell concludes, if Mr. Koch could have found in 1981 that Rabon was the cause of the injuries to his cattle, he could also have found in 1981 that Rabon was the cause of his personal injuries. The court disagrees. The causal link between the presence of Rabon in the R.O.L. Premix and Mr. Koch's personal injuries is, considering the evidence, significantly more tenuous than the causal link between the presence of Rabon in the R.O.L. Premix and the death of Mr. Koch's cattle. There is no need, however, for the court to base its decision on resolution of this issue. Indeed, the court has no need even to reach this issue since the question of whether Mr. Koch could reasonably have ascertained that the presence of Rabon in the R.O.L. Premix was the cause of his personal and property damage before 1991 is a question properly reserved for the jury.

Relying on plaintiffs' somewhat cursory argument and imprecise references to the record, the court concluded in its May 15, 1998, Memorandum and Order that Mr. Koch's 1996 deposition statement regarding Dr. Atteberry's opinion that Rabon caused the problems with the cattle was new evidence requiring partial summary judgment in defendants' favor. The court stated:

Defendants contend that Charles Koch should reasonably have been aware of the

cause of the injury in October 1981. This court rejected a similar argument by Feed Specialties in a Memorandum and Order issued March 18, 1993. Defendants, however, contend that facts revealed in Charles Koch's April 10, 1996, deposition compel a different conclusion. Specifically, defendants refer to Charles Koch's testimony that his veterinarian, Dr. Atterbury, commented to him in October 1981 "I didn't know you was feeding Rabon, there is your liver problems." Since Charles Koch was specifically told that the Rabon was the cause of the fatal liver problems, defendants contend his cause of action accrued in October 1981 and was barred by the limitations period in October of 1993. The court then noted that plaintiffs responded by "refer[ing] the court to their previously filed briefs." The court concluded that "after careful examination of these documents, however, the court could find no argument or evidence addressing defendants' use of Charles Koch's April 1996 deposition testimony."

A more thorough review of the record reveals that conclusion to have been erroneous. Mr. Koch's 1996 deposition testimony regarding Dr. Atteberry's opinion that Rabon caused the problems with the cattle was not, as defendant implied in its summary judgment motion, newly discovered evidence requiring reversal of the court's March 1993 decision on summary judgment. It is instead repetitive, and provides no information not already considered by the court in its March 1993 summary judgment decision. Indeed, Mr. Koch clearly revealed in his 1992 deposition that Dr. Atteberry strongly suspected that the presence of Rabon in the R.O.L. Premix was the cause of the problems with Mr. Koch's cattle.

Shell attempts to distinguish Mr. Koch's 1992 testimony from his 1996 testimony. In his latter testimony, Shell emphasizes, Mr. Koch stated that Dr. Atteberry did more than merely suggest the possibility that Rabon was causing the liver problems in the cattle, and actually "told" him that Rabon was the cause of the liver problems. The court is not convinced that this distinction is significant. However, even if Mr. Koch's 1996 testimony constitutes new information, it does not dilute the effect of the evidence in the record tending to extenuate the causal link between the ingestion of Rabon and the death of Mr. Koch's cattle. Notwithstanding Mr. Koch's 1996 deposition testimony, the court believes that a reasonable jury could determine that Mr. Koch had insufficient evidence to support a claim that Rabon was the cause of his damages until April or May 1991. Accordingly, the court concludes that reconsideration of its May 15, 1998, Memorandum and Order is necessary to correct clear error.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiffs' Motion for Reconsideration (Doc. 307) is granted and defendant Shell Oil's Motion for Reconsideration (Doc. 308) is denied.

**IT IS FURTHER ORDERED** that the portion of the court's May 15, 1998, Memorandum and Order granting summary judgment against plaintiffs is hereby vacated and is revised and superseded to the extent that it is inconsistent with this opinion.